CASE 3—INDICTMENT—SEPTEMBER 22.

# Bowman  v.  Commonwealth.

APPEAL FROM KNOX CIRCUIT COURT.

1. RESISTANCE OF ARREST—RIGHT OF OFFICER TO SHOOT.—Where an officer attempting to execute a warrant of arrest, whether for a misdemeanor or a felony, is met with a deadly weapon in the hands of the defendant in the warrant, and believes and has reasonable grounds to believe that the defendant will shoot him if he attempts to make the arrest, he has the right to use his own weapon, even to the taking of the life of the defendant, if necessary to enable him to execute the warrant, and the court should have so instructed the jury in this case.

2. CHANGE OF VENUE.—As the evidence heard upon the application of the defendant for a change of venue showed that he could not have a fair trial in the county in which the prosecution was pending, a change of venue should have been granted.

DISHMAN & HAYS AND JNO. T. HAYS FOR APPELLANT.

1. The order filing the bill of exceptions having been made at the time the judgment was rendered, and the bill of exceptions tendered and filed within the time allowed by the court, the motion to strike bill of exceptions from the record should be overruled. (Criminal Code, sec. 336, subsec. 4.)

2. In view of the evidence upon the motion, it was error in the court to overrule the motion for change of venue. (Dilger v. Commonwealth, 88 Ky., 557.)

3. Testimony objected to by appellant should have been excluded, it being prejudicial to his cause. •

4. The jury was not empanelled as required by law, and defendant was not tried by a jury of his selection.

5. There being no evidence to create the suspicion of a conspiracy on the part of the defendant to take the life of the deceased, an instruction upon that subject was erroneous. (Brady v. Commonwealth, 9 Bush, 274; 10 Ky. Law Reporter, 222; Allen v. Commonwealth, 9 Ky. Law Reporter, 784.)

6. Defendant was entitled to an instruction upon the law governing officers making arrests, and the instruction upon that subject, being no more than one upon self-defense, was fatally defective, and defendant was prejudiced thereby. (Am. & Eng. Ency. of Law, vol. 9, page 538; 4 Blackstone, 180; Criminal Code, sec. 48; Bowling v. Com-

Bowman v. Commonwealth.

monwealth, 7 Ky. Law Reporter, 822; Fleetwood v. Commonwealth, 3 Ky. Law Reporter, 497; Mockabee v. Commonwealth, 78 Ky., 384; Trimble v. Commonwealth, 78 Ky., 176 )

WM. J. HENDRICK and W. R. RAMSEY for APPELLEE.

1. Bill of exceptions should be stricken from the records from the fact that same has not been signed, allowed or filed of record as required by law, having been filed in vacation. (Criminal Code, sec. 336, subsecs. 1–4; Criminal Code, sec. 282; Civil Code, sec. 334; Allard v. Smith, 2 Metcalfe, 297; Freeman v. Benham, 17 B. M., 603; Vanderver v. Griffith, 2 Metcalfe, 425; Corley v. Evans, 4 Bush, 409.)

2. Filing the bill of exceptions at a term of court beyond the time allowed by the court for filing, is null and void.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant in this case was jointly indicted with Stephen Jones for the murder of William Reeder, and on the trial was convicted and sentenced to the State prison for life. It is charged in the indictment that Bowman and Jones conspired and agreed with each other to take the life of the deceased, and, in pursuance of the conspiracy, the offense was committed. Other counts in the indictment charge the one with aiding and abetting the other in the commission of the felony. At the time of the killing the appellant Bowman was deputy marshal of the town of Barbourville, and Jones, who is indicted with him, the police judge of that town. Jones had issued a warrant for the arrest of the deceased for disorderly conduct, and placed it in the hands of the appellant for execution.

The unfortunate young man, excited by liquor, was flourishing his pistol in the streets of the town, where many people had congregated on that day, it being county court. He was defiant, and evidently proposed to resist any arrest, and the want of vigilance on the part of those intrusted with the execution of the law

led him, no doubt, to believe that he would not be molested by any of the town officers. He was not content with having his own way on the streets of the town, but about eight o'clock at night entered the private dwelling of Mrs. Thompson, whose daughter was entertaining some company, and presented his pistol at a young man calling upon her, and forced him to leave the room, and when the young man left presented the pistol at Miss Thompson. The noise and excitement produced from the conduct of the deceased caused the appellant to proceed to Mrs. Thompson's house, and when he entered, the pistol was presented at him more than once, and the hand in which the pistol was held knocked down by Mrs. Thompson, and the parties told to leave her house.

The appellant was evidently in fear of the deceased —at least neither himself or Jones attempted to arrest him at that time. After he left the house of Mrs. Thompson the police judge issued a warrant for his arrest, and placed it in the hands of the appellant, and when the deceased was told of the warrant and the intention of the officer to arrest, he defied both the appellant and Jones, presenting his pistol at the appellant, saying that they and fifteen more men could not arrest him. He declared that *the police judge could not have him arrested, and did not intend to be arrested by him or by any one with a warrant from him.* When the arrest was finally attempted, with the purpose on the part of the officer to at once execute the writ, the deceased kept his pistol leveled upon him, but when shot was shot in the back of the head. It was after night, and there were four or five pistol

shots, and the appellant admits that when he fired the fourth shot he did not see the deceased, and this, doubtless, was the shot that killed the deceased. The appellant and the deceased were on friendly terms, and the officer was constantly endeavoring to induce the deceased to submit to the arrest, and offered, if he would do so, to take him to his home and keep him all night, and not to the jail, but instead of listening to the conciliatory proposals of the officer it is manifest, from this record, that the purpose of the deceased was to take life before he would submit to an arrest by him. One witness stated that the appellant said there would be a killing in town about twelve o'clock that night, and this proof, together with the fact that the appellant and Jones were consulting together, and had determined to arrest the deceased, has been regarded as evidence of a conspiracy by the two to murder the deceased, and an instruction based upon that hypothesis given the jury.

What is the duty of an officer with a warrant of arrest in his possession against one charged with a misdemeanor, when confronted with a pistol in the hands of the accused, accompanied with the declaration that he will not submit to the mandate of the Commonwealth? Would a return upon the writ that the defendant by force and arms had prevented its execution be held sufficient, or when furnished with a posse, or after summoning law-abiding men to aid in the arrest, will the further response that the accused still defies arrest with pistol in hand, be deemed an excuse? We think not, nor will the fact that his own life was in imminent peril protect the officer from

punishment for a failure to discharge his duty. If the law is not made supreme and its mandates obeyed and executed by officers intrusted with such duties, then the citizen is without protection, our social and governmental system destroyed, and the powers of the law made ineffectual by the presentation of a pistol at the breast of the officer who attempts to execute it.

In the case of a misdemeanor, the mere effort on the part of the party charged to escape arrest or to avoid the officer, or to flee when arrested, will not justify the officer in taking his life, as held by this court in Head v. Martin, reported in 85 Ky., 480 ; but where the resistance to the arrest is with a deadly weapon, and it is apparent the officer can not make the arrest without subjecting himself to the danger of great bodily harm, or of losing his own life, he may shoot. Here the resistance to lawful authority was kept up, the deceased armed with a deadly weapon, and intending, as his conduct clearly evidenced, to use it, and if the appellant had reasonable grounds to believe he would use it, the law did not require him to risk his own life in order to save the life of one who was violating the law, and by force preventing the officer from discharging his duty.

Mr. East says: "It may be premised generally that where persons having authority to arrest * * * * and using the proper means for that purpose, are resisted in so doing, and the party resisting is killed in the struggle, such homicide is justifiable." (1 East, P. C., 295.)

"In misdemeanors and breaches of the peace, as well as in cases of felony, if the officer meet with re-

sistance and the offender is killed in the struggle, the killing will be justified.'' (2 Bishop, Crim. Law, 3d ed., 633.)

'' Although an officer must not kill for an escape where the party is in custody for a misdemeanor, yet if the party assault the officer with such violence that he has reasonable ground to believe his life is in peril, he may justify killing the party.'' (1 Russell, 9th ed., 857.)

''So long as a party liable to arrest endeavors peaceably to avoid it he may not be killed, but whenever, by his conduct, he puts in jeopardy the life of any one attempting to arrest him, the act of killing him by those authorized and attempting to make the arrest, will be excused.'' (State v. Anderson, 1 Hill (S. C.), 213.)

Protection must be afforded ministerial officers in the discharge of their duties, and while the life of one charged with a minor offense ought never to be taken, although resisting arrest, unless absolutely necessary, still the order of arrest must be executed, and where the officer is resisted with such force as the use of a deadly weapon, or the attempt to use it, in order to prevent the execution of the writ, he can meet it with like force, if necessary, to enable him to discharge his duty, and to protect his own life, or to save him from great bodily harm. He is not compelled to retreat, but can use such force as will enable him to take the body of the party charged, and to overcome the resistance offered him.

There is no evidence that we can perceive of any conspiracy to take the life of the deceased by the

parties to the indictment, and no instruction should have been given to that effect. The court below seems to have overlooked the necessity of informing the jury as to the duty of the appellant when the order of arrest was placed in his hands.

It was his duty to make the arrest, and to use such force as was necessary for that purpose, and if the deceased resisted the arrest by the use of a deadly weapon, the accused had the right, if he believed, and had reasonable grounds to believe,. that the deceased would shoot him if he attempted the arrest, to use his own weapon, even to the taking of the life of the deceased, if necessary to enable him to execute the warrant, and the jury should have been so instructed.

When this case was called for trial the appellant moved for a change of venue, and the court refused to grant it, and as the case must go back, it is proper to pass on that question. It is plain that those connected with the deceased, either by relationship or the ties of friendship, were much incensed at the conduct of the appellant, and the excitement ran so high as to cause the defeat of the county judge, who had granted bail to the appellant. The witnesses for the State, who think the appellant could obtain a fair trial, all save one or two, concur in the statement that all those who had spoken out on the subject, regarded the shooting as a *bad murder*. The newspapers contained a defense by the county judge of his action in granting bail, and was made in response to a published statement of the father, detailing the circumstances of the killing.

The witnesses for the defense, many, and perhaps all of them, having but little interest in the defendant, he

having lived in the county but a short time, state that he could not have a fair trial by reason of the prejudice against his case, and the influence of those connected with the deceased.

In our opinion a change of venue should have been granted, and for that reason, in connection with the errors of the trial court already referred to, this judgment of conviction is reversed, and the case remanded for a new trial and for proceedings consistent with this opinion.

The bill of exceptions is properly a part of the record.