Stevens v. Commonwealth.

For these reasons, the judgment of the lower court is affirmed.

---

CASE 5.—PROSECUTION AGAINST R. FLEM STEVENS FOR MURDER.—December 7, 1906.

## Stevens v. Commonwealth

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Defendant convicted and appeals. Reversed.

1. Criminal Law—Appeal—Evidence.—Where there is some evidence on which to base a conviction, it cannot be set aside on appeal as unauthorized or flagrantly against the evidence.

2. Homicide—Evidence—Reputation of Deceased.—In a prosecution of a peace officer for killing deceased while attempting to restrain him from escaping, evidence concerning decedent's reputation among peace officers in the county, as distinguished from his acquaintances generally, was inadmissible.

3. Criminal Law—Conduct of Trial—Perons Present—Unanticipated Outbreak.—In a prosecution for homicide, it was not error for the court to permit decedent's widow to sit in the courtroom during the taking of testimony, and, while weeping, to make an unanticipated outbreak denouncing defendant, she having been quickly required thereafter to withdraw from the courtroom.

4. Same—Objections—Exceptions—Necessity.—In a prosecution for homicide, the failure of the court to put an earlier end to a sudden outbreak and manifestation of grief on the part of decedent's widow, before the jury, could not be reviewed on appeal, in the absence of an objection and exception taken thereto at the time.

5. Same—Argument of Counsel.—Misconduct of the commonwealth's attorney in his closing arguments to the jury cannot be reviewed on appeal, where it was first presented to

the trial court in defendant's motion and grounds for a new trial without any objection taken thereto at the time or request that the court admonish the jury not to consider it, and an exception reserved.

6. Arrest—Necessity of Warrant—Peace Officer—Authority.— Where decedent was both drunk and disorderly in the presence of a peace officer, the officer was authorized to arrest him without a warrant, and hold him until a police justice could be sent for and either try him or commit him in default of bail.

7. Homicide—Preventing Escape of Prisoner.—Where, after defendant had legally arrested decedent for misdemeanor, decedent attempted to release himself from arrest by forcibly overpowering defendant, the latter was entitled to use such force as was reasonably necessary to overcome that used by decedent, even to the extent of shooting and killing him, if it reasonably appeared to defendant that that was the only way of preventing his escaping from defendant's custody, though defendant would have had no right to shoot deceased if he had got away from him and was fleeing to escape.

8. Same—Iustructions.—In a prosecution of a peace officer for killing decedent after his arrest for misdemeanor, the court charged that, if decedent refused to submit to the arrest or to remain in the officer's custody, the latter was entitled to use reasonable force to compel him to submit, and if decedent assaulted the officer, the latter was entitled to defend himself and use force reasonably necessary to repel the assault and protect himself from great bodily harm or death at the hands of decedent or overcome the latter's force to resist arrest or continued control after arrest, but that defendant had no right to kill decedent nor to retain custody of his person except as decedent was assaulting defendant, etc. Held, that such instruction was erroneous, as limiting the officer's right to kill to the single ground of self-defense.

H. P. TAYLOR, S. A. ANDERSON and M. L. HEAVIN, Attorneys for Appellant.

POITS AND AUTHORITIES.

1. There is no proof to support an issue of manslaughter, and instructions "II, III and IV" were, therefore, erroneous. (Mackey v. Commonwealth, 80 Ky., page 347; Slagel v. Commonwealth, 81 Ky., page 485; Justice v. Commonwealth, 20 L. R., 390; Montgomery v. Commonwealth, 23 L. R., 732; Stovall v. Common-

wealth, 23 L. R., 103; Coffman v. Commonwealth, 51 Ky., 18 B. Mon., 35; Mahan v. Commonwealth, 21 Ky. L. R., 1808.)

2. The danger is not as it appears to the jury, but as it appears to the defendant at the time of the killing, for the jury may believe now that there was no real danger, still if accused thought in good faith there was, he had the right to kill, and the jury should acquit: (5th R. 67, 103, and 244, 81 Ky., 233; Coffman v. Commonwealth, 10 Bush, page 498; Cockrill v. Com· monwealth, 95 Ky., page 25; Munday v. Commonwealth, 11 Bush, 347, 14 B. Mon., 620; Thatcher v. Commonwealth, 24 L. R., 1584.)

3. Whether requested or not it is the duty of the court in criminal cases to instruct the whole law applicable to the issue. (Cook v. Commonwealth, 10 L. R., 222; Buckels v. Commonwealth, 24 L. R., 571; L. & N. R. R. Co. v. Commonwealth, 84 Ky. 457, 113 Ky. 795, 8 L. R., 457.)

4. Presumptions and reasonable doubt defined with this court's approval: (Patterson v. Commonwealth, 99 Ky., 622.)

5. It was competent to show the dangerous reputation of deceased among the peace officers of the county. (Trabue v. Commonwealth, 13 L. R., 343.)

6. This court can not speculate as to the effect of competent evidence, which was, by the trial court, excluded from the jury: (Coppage v. Commonwealth, 3rd Bush, 532; Criminal Code, section 340.)

7. Misconduct of Mrs. Growbarger and Commonwealth's attorney, pro tem., was prejudicial to the defendant's right to a fair and impartial trial. (Blackstone's Commentaries Sharswood's Ed., vol. 4, page 181, 200; Cupp v. Commonwealth, 87 Ky. 41, 42; Cargill v. Commonwealth, 12 L. R., 149.)

N. B. HAYS, C. H. MORRIS, MORRIS & SOUTH, G. B. LIKENE and W. H. BARNES for the Commonwealth.

ON PETITION FOR REHEARING.

We earnestly request the Court to reconsider its opinion, believing in good faith that after a careful examination of the Common Law as laid down by the elementary writers, and as generally adopted by the decisions of the courts of other jurisdictions, it will not establish a rule so radically different from that heretofore adopted by the decisions of this court, and which would place one charged with the slightest violation of the law, after his arrest if he attempt to escape, on the same footing with one charged with the most heinous of crimes. Such a rule could subserve no good purpose to society, would be inhuman in the

extreme, and would not be becoming to the majesty of the law.

We feel that after a careful examination of the authorities cited, the court will grant a rehearing of the cause and affirm the judgment of the lower court, for all of which, we respectfully pray.

### AUTHORITIES CITED.

Bouvier's Law Dictionary; Black's Law Dictionary; Kentucky Criminal Code, sections 42 and 43; Kentucky Statute, section 1338; Risch v. Bailey et al; Opinion filed November 27, 1906. Stevens v. Commonwealth, (Ky.) 20 R., 544; Bowman v. Commonwealth, (Ky.) 16 R. 186; Petrie v. Cartwright (Ky.) 59, L. R. A., 720; Cyc. vol. 3, page 892; Cyc. vol.21, page 797; Am. and Eng. Encyclopedia of Law (2nd ed.) vol. 21, pages 204 and 305; State v. Dierberfer, (Mo.) 10 S. W., 168; Thomas v. Kinkead et al. (Ark.) 15 L. R. A., page 558; Williams v. State, 44 Ala. 41; Clements v. State, 50 Ala., 117; Reneau v. State Sec. Lea. (Tenn.), 720; Brown v. Weaver (Miss.) 42 L. R. A., 423; Conraddy v. People, 5 Park Crim., (N. Y.), 234; Rischer v. Meelan, 11 Ohio Cir. Ct., 403; U. S. v. Clark, 31 Fed. R. 710; Forster's case (Eng.) I. Lewis, 187; Smith v. State, 59 Ark., 132; State v. Smith (Iowa) 67 L. R. A., 292; State vs. Stancill, 128, N. C., 606; Com. v. Rhoads, 23 Pa. Super. Ct., 512; State v. Whittle, 59 S. C., 297; State v. Garrett, 60 N. C., 144; Arthur v. Wells, (S. C.) 2 Mill 314.

OPINION OF THE COURT BY JUDGE SETTLE— Reversing.

The appellant, R. Flem Stevens, was indicted and tried in the Ohio circuit court for the murder of W. L. Grawbarger. The jury by their verdict found him guilty of voluntary manslaughter, and fixed his punishment at two years' confinement in the penitentiary. Appellant was refused a new trial in the lower court, and now asks of this court a reversal of the judgment appealed from.

Appellant, at the time of the homicide, was marshal of the town of McHenry, and having been sent for by a barber to remove the deceased from the vicinity

of his shop on account of his drunken and disorderly
conduct, he went to the shop in question and found
deceased in front of and near it. Discovering that
he was drunk and boisterous, appellant placed him
under arrest and started with him to the McHenry
railroad depot, where there was a light, intending
after reaching the depot to send for the police judge,
that he might immediately issue a warrant against
deceased for his misconduct, and make some dis-
position of the case.  Upon reaching the depot
deceased, who, down to that time, had quietly sub-
mitted to the arrest, refused to enter the building,
and thereupon he and appellant got into an alterca-
tion, during which the latter shot and killed him.
The evidence as to the difficulty was very conflicting.
Four witnesses, Hobdy, Maddox, and the two Turners,
introduced by the commonwealth, claimed to have
seen it.  According to their testimony, when appel-
lant opened the door of the depot building, deceased
objected to entering, whereupon appellant knocked
him down with a pistol, or billy, shot him twice while
down, again in the act of rising, then twice more when
he fell upon the floor of the east shed of the depot.
On the other hand, appellant testified in his own
behalf that, upon reaching the depot door, deceased,
who was a much larger and stronger man than he,
with his left hand grasped appellant's right hand,
and holding it as if in a vise, threw his right hand
and arm around appellant's neck, thereby pressing
his head against deceased's breast, and began to
struggle, as if to throw appellant to the floor and kill
him, or do him great bodily harm, in view of which,
and of threats that deceased had previously made
against him, appellant got his pistol from his pocket
with his left hand, and shot deceased twice, some-
where in the back, which caused the latter to release

his hold of him and to fall down, but immediately getting on his feet deceased advanced toward appellant with the remark, "God damn you, I have not got enough of you yet," and again seized and bore down on him much as he had done before; whereupon appellant, changing the pistol from his left to his right hand, shot deceased three times in front, when he fell to the floor and died. In the main, appellant's version of the homicide was corroborated by Dott and Nall, railroad employes, then in the depot, Gans and Toll who were across the street, and, in some measure, by Miss Pirtle, Bishop, and Cope, who were farther away. In addition to the testimony of the witnesses named, there was some further proof that deceased had, prior to his arrest, in effect, said he would not be arrested by appellant, and that the latter had, in substance, declared he would use his pistol in arresting a man like deceased, or of his kind. Evidence was also introduced by the defense to show that, at the time of the homicide, which occurred at night and under the depot shed, there was a nine-day moon, and that the moonlight was insufficient for the commonwealth's witnesses to see what was done by the parties engaged in the conflict. On the other hand, the testimony of the commonwealth's eyewitnesses to the homicide, and others, was that the light from the moon was sufficient to enable them to see what took place. From all the evidence the jury reached the conclusion that the homicide was not justifiable. As there was some evidence upon which to base the verdict, we are not at liberty to declare that it was unauthorized, nor have we the right to set it aside upon the ground that it was flagrantly against the evidence.

It is insisted for appellant that the trial court erred in refusing to allow him to prove by certain witnesses,

of whom the question was asked, that the reputation
of deceased among the peace officers of the county
was that of a dangerous man.   We think the court
ruled correctly in excluding such testimony.   It was
not proper to show what deceased's reputation in the
particular named was among peace officers, any more
than any other class.   It was, however, competent
to show that such was his reputation among his
acquaintances generally in the community in which
he lived, and this appellant was permitted to prove,
and did prove, by quite a number of witnesses,
including peace officers.

It is also complained that the trial court was guilty
of misconduct during the trial in that he permitted
the widow of deceased who sat in the courtroom
during the taking of testimony, to weep in the pres-
ence of the jury, and cry out at appellant, saying:
"Flem Stevens, why did you not kill me or my sweet
baby, instead of my husband, who died with a smile
on his face?"   This outbreak on the part of Mrs.
Grawbarger was nothing more than an uncontrollable
manifestation of her grief, which could not have been
anticipated by the court, or the officers of the court,
then present.   Moreover, it is admitted by counsel
that she was quickly required by the court to with-
draw from the courtroom.   The episode, though ill-
timed and improper, was such as frequently occurs,
and it could not have been prevented by the court
except by an order made at the beginning of the trial
refusing the widow the right to enter or remain in
the courtroom during its progress, which would have
been an unusual, as well as a harsh and unjustifiable,
requirement that appellant himself did not care to
demand.   It does not appear from the record that he
or his counsel objected to the conduct or statement
of Mrs. Grawbarger, or that they excepted to the

court's failure to put an earlier end to the occurrence, and, in the absence of such an objection and exception, this court will not consider the alleged error.

We are also without power to consider appellant's complaint as to the alleged misconduct of the acting commonwealth's attorney in the closing argument to the jury, as it does not appear from the record that the alleged improper statement made by him was objected to at the time, that the court was asked to admonish the jury not to consider it, or that its failure to do so was excepted to by appellant. It was not sufficient to present the matter to the lower court for the first time in the motion and grounds for a new trial.

Appellant's objection to the instructions of the court made at the time they were given require us to consider and pass upon them. Their number and length make it impracticable to copy them in the opinion. Eight of them, though in some respects inaptly expressed, we think substantially correct,, but the one marked "No. 5" we are unable to approve. It is as follows: "The court further instructs the jury that, as a matter of law, the defendant being a peace officer in the town of McHenry at the time of the killing of the deceased, Grawbarger, he had the right to arrest the deceased, if he was drunk or committing a breach of the peace in his presence, without any warrant, and had the right to take deceased before the police judge of the town of McHenry to be dealt with according to law. And if the said Grawbarger, after having been arrested by the defendant, refused to submit to said arrest, or to remain in the defendant Stevens' control, as marshal, then the defendant had the right to use reasonable force to compel said Grawbarger to submit to his authority and to continue in his control.

and, if the jury believe from the evidence that the deceased, Grawbarger, refused to continue in the con-trol of the defendant as marshal, and assaulted said marshal, the defendant in this action, the defendant. Stevens, had the right to defend himself from said assault, and to use such force as was reasonably or apparently necessary to repel said assault, but the defendant Stevens had no right, even if assaulted by said Grawbarger, after he had been arrested, to use any more force than was reasonably or apparently necessary to protect himself from great bodily harm or, death at the hands of deceased, Grawbarger, or to overcome the force, if any, offered by the said Grawbarger in his resistance of said arrest, or con-tinued control after the arrest. And the court further instructs the jury that the defendant had no right to kill the said Grawbarger in order to retain custody of his person after having arrested him, charged with disorderly conduct or drunkenness, or breach of the peace, except as the said Grawbarger was assaulting the defendant as supposed in these instructions.'' Under the facts appearing in the record there can be no doubt that appellant had, as a peace officer, the right to arrest deceased without a warrant, as he was both drunk and disorderly in the officer's pres-ence. Appellant's right to take him to the depot and hold him in custody until the police judge could be sent for in order that he might try him for the offense committed in the presence of the officer, or commit him to prison in default of bail until the next day, is also free from doubt. It is the theory of the defense that, after the arrest of deceased, had been properly made by appellant, he forcibly resisted the latter in the attempt to release himself from arrest, that is. from appellant's custody as a peace officer, by assaulting him, and that appellant in the effort to

retain him in custody and to protect himself from danger of death or great bodily harm, or what reason· ably appeared to him to be such danger, shot and killed him. It was for the jury to determine from the evidence introduced by the appellant in support of this theory whether the killing was or was not justifiable. It is, however, patent that the above instructions confined appellant's right to kill deceased to the single ground of self-defense, which was error. For, though he may not have had any reason to fear death or bodily harm at the hands of deceased, if the latter was attempting to release himself from arrest by forcibly overpowering appellant, the latter had the right to use such force as was reasonably necessary to overcome that being used by deceased to effect his release, even to the extent of shooting and killing the latter, if it reasonably appeared to appellant that that was the only way to prevent his release from his (appellant's) custody, though he would have had no right to shoot deceased if he had gotten away from him and was fleeing to escape.

In the case of Head v. Martin, 85 Ky., 482, 9 Ky. Law Rep., 45, 3 S. W., 622, the single question pre· sented for decision was whether a peace officer, in arresting the defendant in a bastardy warrant, had the right to shoot and kill him while fleeing. In the opinion it is said: ''It is attempted to draw a distinction between a case where one is attempting to avoid arrest, and where one is endeavoring to escape after arrest. If, however, the offender is in flight, and is not at the time resisting the officer, then the law is the same, whether he be fleeing to avoid arrest, or to escape from custody. * * * The appellee, Martin, had, in fact, been arrested by the appellant, Head, as deputy sheriff, and was shot by the latter when fleeing from his custody, but the fact that an

arrest had been made does not alter the law of the case.'' After holding that the offense of bastardy is to be regarded as a misdemeanor, and that the statute of this State in respect to arrests does not prescribe how they shall be made, but merely provides that ''no unnecessary force or violence shall be used in making the arrest,'' the opinion proceeds to say: ''We, therefore, turn to the common law for guidance. By it an officer in a case of felony may use such force as is necessary to capture the felon, even to killing him when in flight. In the case of a misdemeanor, however, the rule is different. It is his duty to make the arrest. He may summon a posse and may defend himself, if resisted, even to the taking of life, but, when the offender is not resisting, but fleeing, he has no right to kill. Human life is too sacred to admit of a more severe rule. Officers of the law are properly clothed with its sanctity. They represent its majesty, and must be properly protected, but to permit the life of one charged with a mere misdemeanor to be taken when fleeing from the officer would, aside from its inhumanity, be productive of more abuse than good. The law need not go unenforced. The officer can summon his posse, and take the offender. * * * An officer in arresting or preventing an escape for a misdemeanor, may oppose force to force. and sufficient to overcome it, even to the taking of life. If the offender puts the life of the officer in jeopardy, the latter may, se defendendo, slay him, but he must not use any greater force than is necessary for his protection.'' Roberson's Criminal Law, sections 153, 154; Dilger v. Commonwealth, 88 Ky., 550, 11 Ky. Law Rep., 550, 11 S. W., 651; Doolin v. Commonwealth, 95 Ky., 29, 23 S. W., 663; 15 Ky. Law Rep., 408; Bowman v. Commonwealth, 96 Ky., 8, 27 S. W., 870, 16 Ky. Law Rep., 186; Fleetwood v. Com-

monwealth, 80 Ky., 1, 3 Ky. Law Rep., 497; Mockabee
v. Commonwealth, 78 Ky., 380.   The same doctrine
is stated in Bishop on Criminal Law, sections 662,
663, as follows: "The justification of homicide hap-
pening in the arrest of persons charged with mis-
demeanors, or breaches of the peace, is subject to a
different rule from that which we have been laying
down in respect to cases of felony, for, generally
speaking, in misdemeanors it will be murder to kill
the party accused for flying from the arrest, though
he cannot otherwise be taken, and, though there be a
warrant to apprehend him, but under the circum-
stances, it may only amount to manslaughter, if it
appear that death was not intended.   *   *   *   But,
in misdemeanors and breaches of the peace, as well
as in cases of felony, if the officer meet with resist-
ance, and the offender is killed in the struggle, the
killing will be justified."   The instruction of self-
defense given by the lower court, together with the
one given below in this opinion, will be sufficient to
advise the jury under what circumstances the killing
of deceased may be excused, if excusable at all, under
the evidence.

The instruction which the court is directed to give,
on a retrial of the case, in lieu of No. 5, should be
expressed as follows: "The court instructs the jury
that, if they believe from the evidence deceased was
drunk and disorderly in the presence of appellant,
the latter, as marshal of the town of McHenry, had
the right to arrest him without a warrant, and to hold
him in custody until the presence of the police judge
could be secured to make some disposition of the
case, and, if they further believe from the evidence
that, after the arrest of deceased, and while appellant
had him in custody, deceased attempted by force or
violence to effect his release from appellant's cus-

tody as an officer, appellant had the right to use such force as was necessary or reasonably appeared to him to be necessary, but no more, to overcome the forcible resistance of deceased, and if, under these circumstances, he shot and killed deceased, the killing was excusable, if appellant could not otherwise overcome the forcible resistance of deceased, or it reasonably appeared to him that he could not do so."

On account of the error committed by the trial court in giving instruction No. 5 to the jury, the judgment is reversed, and the case remanded for a new trial consistent with the opinion.

Petition for rehearing by appellee overruled.