CASE 84.—PROSECUTION AGAINST JAMES A. SHIPP FOR MURDER.—February 20.

## Shipp v. Commonwealth

124  643
f133  397

Appeal from Taylor Circuit Court.

I. H. THURMAN, Circuit Judge.

Defendant convicted of murder and appeals.  Reversed.

1.  Criminal Law—Change of Venue—Duty of Court.—Where, on an application of defendant for a change of venue, the petition and affidavits complied with the statute and established a prima facie case, it was the duty of the court, in the absence of other evidence, to grant the change.

2.  Same—Local Prejudice—Prima Facie Case.—Where, on an application by defendant for a change of venue for prejudice of the inhabitants of a county, the petition was in proper form, and it was supported by the affidavits of three citizens of the county, who stated that they were well acquainted with the public opinion, and that they verily believed the statements of the petition to be true, and were of the opinion

that defendant could not get a fair trial within the county, such petition and affidavits established a prima facie case.

3. Same—Evidence—Abuse of Discretion.—In a prosecution for homicide, defendant applied for a change of venue, and established that decedent was extensively related within the county; that his relatives were influential and prominent citizens so numerous that there was not a precinct in the county where some of them did not reside; that they were extremely hostile to defendant, and since the homicide had been active in framing public sentiment against him, and had so diffused highly colored reports purporting to be the facts of the homicide that the better element of the jurors of the county had formed opinions as to defendant's guilt; and that he could not get a fair and impartial trial in that county. On the hearing a dozen or more witnesses were introduced on each side and few, if any, of the State's witnesses claimed to know the sentiment in the county, merely stating their opinion that they believed that the people of the county would give any man a fair trial. Defendant's witnesses, however, swore that the feeling was strong against him; that lawyers had been advised not to engage in his defense; that several people had said he ought to be hung "crazy or not crazy;" and "that his relatives for 14 generations had died with their boots on." Held, that the denial of the application was an abuse of discretion

4. Same—Curing Error—Summoning Jury from Another County. —After an application by defendant for a change of venue for local prejudice had been denied, the court attempted to get a jury within the county but failed. A jury was then ordered from another county, which, without the knowledge of either the trial court or defendant, was summoned by an important witness for the Commonwealth, and lodged at the house of Coffey, who, with her daughter, were also witnesses for the Commonwealth, the wife of the officer in charge of the jury being also cousin of both decedent and his wife. Held, that he summoning of such jury did not cure the error in the court's refusal of the change of venue.

5. Homicide—Motive—State of Mind—Evidence.—Where, in a prosecution for homicide, defendant pleaded insanity, and claimed that his act was the result of an alleged criminal intimacy between his wife and decedent, evidence that shortly before the killing defendant's wife confessed to him, in the presence of his son, a criminal intimacy with decedent, was admissible to show motive and defendant's state of mind at time of the killing.

6. Same—Declarations of Third Persons.—In a prosecution for

homicide, evidence that defendant's wife confessed her intimacy with decedent to defendant's son before the homicide was inadmissible, in the absence of proof that such confession had been communicated to defendant prior to the killing.

7. Same—Character of Third Persons.—Where, in a prosecution for homicide alleged to have been caused by decedent's criminal intimacy with defendant's wife, the wife was not a witness in the case and her reputation for chastity was not in issue, it was error to permit the Commonwealth to prove in rebuttal that the reputation of defendant's wife for virtue and chastity was above reproach.

8. Same.—Where, in a prosecution for homicide, it was claimed that defendant shot decedent because of his criminal intimacy with defendant's wife, and it was proved that she confessed such intimacy to defendant shortly before the homicide, the Commonwealth could break the force of such alleged confession by proof that the wife was not at the place where the confession was stated to have been made, or that defendant and his son, who claimed to have heard it, were not there at such time, or by impeaching the reputation of defendant and the son for truth and veracity.

9. Criminal Law—Misconduct of Counsel—Prejudicial Error.—In a prosecution for homicide alleged to have been occasioned by decedent's criminal intimacy with defendant's wife, after the court had erroneously allowed evidence of the wife's good character, counsel for the Commonwealth stated in his argument to the jury: "This great concourse of ladies and gentlemen have assembled here, not as a compliment to the speaker, but to attest by their presence the high regard in which Mrs. Shipp (defendant's wife) is held, and her good character." Held, that such argument was prejudicial error, and was not cured by the admonition of the court that the jury should not consider such statement.

10. Homicide—Voluntary Manslaughter—Instructions.—In a prosecution for homicide, an instruction on voluntary manslaughter that if the jury believe beyond a reasonable doubt that defendant shot and killed decedent in sudden heat and passion, and without previous malice, the jury should find him guilty of manslaughter, etc., was objectionable for failure to require the jury to find that the killing was willful or unlawful.

11. Same—Feloniousness.—An instruction on voluntary manslaughter need not require that the killing be "feloniously" done.

12. Same.—In a prosecution for homicide, an instruction on voluntary manslaughter should have charged that, if the jury

believed from the evidence beyond a reasonable doubt that defendant did willfully and not in self-defense shoot and kill decedent, and that the shooting was done in a sudden affray, or sudden heat and passion, without previous malice, and under such provocation as was ordinarily calculated to excite passion beyond control, they should find him guilty of manslaughter, etc.

13. Criminal Law—Trial—Misconduct of Counsel—Examination of Witnesses.—In a prosecution for homicide, it was prejudicial error for the Commonwealth's attorney, in cross-examining witnesses for defendant, to persist in asking improper questions, to which objections were sustained, as to whether one of them had killed a man, whether another had ever had occasion to arrest defendant, take him home, or get him to leave town, whether a witness was present when defendant got into trouble with another, and whether still another witness was the same man who testified on the motion for a change of venue that 14 generations of defendant's family had "died with their boots on."

LEWIS McQUOWN, HAZELRIGG, CHENAULT & HAZELRIGG and H. S. ROBINSON, attorneys for appellant.

1. We submit that the testimony of the appellant and his son to the effect that on Saturday before the killing the wife of appellant admitted criminal intimacy with the deceased was competent for the purpose, not of proving the fact of such intimacy, as no such issue was involved, but for the purpose of showing the mental condition of the husband when he met the deceased for the first time on the Monday following. Such admission if false in fact was as effective to produce the frenzy, or "sudden heat and passion" as if it were in fact true.

2. The wife not having testified her reputation is not involved and the attempt to show that her general reputation for morality was so good that she could not likely have made such a confession involves a proposition unheard of in the law of evidence.

3. It was competent to impeach appellant and his son so as to show that the wife made no such confession, but it was not competent to prove the truth or falsity of the facts alleged to have been imparted by the wife to her husband.

4. The true issue is did the wife make such admission, and the testimony of appellant and his son that she did, can only be destroyed in the usual way of impeachment. (State v. Slaten, 114 N. C., 818; Wall v. State, 125 Ind., 400; Omer v. Commonwealth, 95 Ky., 363; Massie case, 16 Ky. Law Rep., 791.)

Shipp v. Commonwealth.

JEFF HENRY, N. B. HAYS, Attorney General, and C. H. MORRIS, for appellee.

1. To entitle the defendant to a change of venue in a criminal case the burden is on him, at least, to make out a prima facie case. (Wilkerson v. Commonwealth, 88 Ky., 29; Hanson v. Commonwealth, 10 Ky. Law Rep., 1055.)

2. The trial court has a sound discretion in determining whether or not a motion for a change of venue shall be sustained, and its conclusions will not be disturbed unless palpably abused. (Howard v. Commonwealth, 15 Ky. Law Rep., 873; Wren v. Commonwealth, 8 Ky. Law Rep., 418; Hanson v. Commonwealth, 10 Ky. Law Rep., 1054; Crockett v. Commonwealth, 100 Ky., 382; Mount v. Commonwealth, 27 Ky. Law Rep., 788.)

3. An error pointed out for the first time in a motion for a new trial will not be considered on appeal. (111 Ky., 644; 22 Ky. Law Rep., 638; 23 Ky. Law Rep., 1231; 18 Ky. Law Rep., 657.)

4. The record does not disclose that there was an objection to the order directing the summoning of the jury from another county.

5. It is submitted that the good character of a party accused of crime, satisfactorily established, is an ingredient which ought to be submitted to the jury.

6. We submit that the testimony as to the good character of appellant's wife was competent to contradict the testimony of appellant and his son as to her alleged confession of infidelity to her husband. (Commonwealth v. Hourigon, 89 Ky., 35; Commonwealth v. Snapp, 90 Ky., 585; Scott v. Commonwealth, 94 Ky., 511; Howard v. Commonwealth, 80 S. W., 211.)

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

On January 3, 1906, appellant was indicted by the grand jury of Taylor county for the murder of Joe A. Smith. On the same day appellant filed his petition for a change of venue, accompanied by the affidavits required by the statutes. After hearing proof the court, on the ninth day of the January term, 1906, overruled the motion for a change of venue, and the defendant (appellant) was given until the April term to file his bill of exceptions. At that term of the court he filed his bill of exceptions, and renewed his motion for a change of venue, which was overruled. The case

then proceeded to trial, resulting in the conviction of appellant to the State penitentiary for the term of his natural life. The facts of the commonwealth, as shown by the testimony for the commonwealth, were about these: On the morning of December 1, 1905, appellant left the home of his sister in Phillipsburg, and boarded a train for Campbellsville. Arriving there, and while walking down the street, he discovered Smith, the deceased, standing some distance down the street on the opposite side. Appellant then entered a store near by, where he rented a gun for one hour's time (without informing the clerk, however, for what purpose he wanted it), loaded it, placed it under his arm, with muzzle pointing downward, walked down and across the street to where deceased was standing, and shot him in the left breast, killing him almost instantly. The proof for the commonwealth indicates that neither spoke a word. Appellant, however, testified, that upon approaching the deceased, he asked him, "Why did you ruin my home?" and then shot him. After the shooting appellant at once sought out the county judge at his place of business, surrendered, and was placed in jail, where he has remained since. Appellant's plea was not guilty, his real defense being insanity. He had been in a bad state of health for two or more years previous to the homicide. His afflictions, a disordered stomach, severe pains in the back of the head and neck, hay fever in the fall season of each year, annoyed him very much. About two months before the killing he began to suspect an undue intimacy between the deceased, Smith, and his (appellant's) wife. From that time on his physical and mental troubles and derangements seemed to become more aggravated and pronounced. He abandoned his business, traveled aimlessly about, roving from place to place, apparently

unbalanced in mind. He claimed to have converse
with God, walked upon the highways gesticulating.
wildly and talking aloud to himself, often sitting for
a long time in public places, with his face buried in his
hands, weeping bitterly, and, when asked the cause
of his trouble, would reply that his home had been
ruined.   On   Saturday   preceding   Monday,   the
day   of   the   killing,   he   claims   his   wife   con-
fessed to him her infidelity and improper conduct
with Smith. He immediately left his home at Camp-
bellsville and went to Phillipsburg to his sister's, as
stated, returning about noon of Monday, the day of
the killing. This was the first time he had seen Smith
after the confession of his wife to him. ·From this
judgment of conviction he has appealed, and the case
was submitted for decision on the 25th of January,
1907.

Appellant assigns the following errors: First, the
refusal of the circuit court to change the venue on
appellant's motion.   Second, the admission of incom-
petent evidence against appellant, and rejecting com-
petent evidence offered by him.   Third, that the court
erroneously   instructed,   and   refused   to   properly
instruct, the jury.   Fourth, the court's refusal to
discharge the jury on account of the misconduct of
counsel for the commonwealth during the trial.

We will take up the errors complained of in the
order named.

The petition for a change of venue alleged in sub-
stance the following facts: That Smith, deceased, was
extensively related in Taylor county; that his rela-
tives   were   influential   and   prominent   citizens,   so
numerous that there was not a precinct in the county
where some relative of Smith did not reside; that they
were extremely hostile to appellant, and, since the
homicide, had been active in framing public sentiment

against him; that they had so diffused highly colored reports purporting to be the facts of the homicide that the citizens liable to jury service, the better element of jurors of Taylor county, had formed opinions as to the guilt of appellant; that, on account of the undue influence of Smith's relatives, the harsh and bitter feeling engendered against him by a concerted prosecution, he could not get a fair and impartial trial in Taylor county. Three citizens of the county, who stated that they were acquainted with the public opinion prevailing in the county, and that they verily believed the statements of the petition were true, in their respective affidavits, filed as required by statute, expressed it as their opinion that appellant could not get a fair trial in Taylor county. On the hearing of the motion for a change of venue a dozen or more witnesses were introduced on each side. Most of the commonwealth witnesses who testified on the hearing of this motion resided in or near Campbellsville, and few of them, if any, claimed to know the public sentiment in the county with reference to the prosecution, but each of them gave it as his opinion that appellant could obtain a fair trial; several of them stated that they knew the people of the county, and that they believed they would give any man a fair trial upon any charge. All the witnesses, however, agreed that the relatives of the deceased were prominent and influential, very numerous, some one or more of them residing in every precinct in the county. Many of the appellant's witnesses were persons whose business required them to travel over the county a great deal, who stated that they were acquainted with the public sentiment in the county existing against appellant with reference to the killing; that it was strong against him; that lawyers of the town had been advised not to engage in his defense; that to do so would greatly

injure their business; that they heard several people express themselves that Shipp ought to be hung; that the Shipps had killed enough people. One witness stated that "the Shipps for 14 generations had died with their boots on, and that that fact was pretty generally known." Another stated: "I have heard considerable discussion about this killing, and among those who claim to have heard the facts, or know the facts, the sentiment is pretty general that Shipp ought to be punished. I have heard some people speak bitterly of him." Some of them also testified that appellant's wife was very extensively related throughout Taylor county, and that her people were very bitter against him. They all agreed that it was their opinion that appellant could not have a fair and impartial trial in the county, and some of the witnesses stated that they heard people say that "Shipp ought to hang, crazy or not crazy."

Construing the statute providing for a change of venue, this court has announced the rule to be that, when the petition and affidavits comply with the statute, a prima facie case is thus made, and, in the absence of other evidence, it is the duty of the court to change the venue. See Higgins v. Commonwealth, 94 Ky., 54, 14 Ky. Law Rep., 729, 21 S. W., 231, and Wilkerson v. Commonwealth, 88 Ky., 29, 9 S. W., 836, 10 Ky. Law Rep., 656. The petition and affidavits filed in this case made out a prima facie case, and we are of the opinion that the evidence of the commonwealth did not overthrow it, but that the oral testimony on the whole strengthened it. In Bowman v. Commonwealth, 96 Ky., 8, 16 Ky. Law Rep., 186, 27 S. W., 870, the venue was directed to be changed by this court. It was there said: "The witnesses for the State, who think that appellant could obtain a fair trial, all save one or two, concur in the statement

that all those who had spoken on the subject regarded the shooting as a bad murder.  *  *  *  The witnesses for the defense, many, and perhaps all, of them, having but little interest in the defendant, he having lived in the county but a short time, stated that he could not have a fair trial by reason of the prejudice against his case, and the influence of those connected with the deceased.'' As in this case all the witnesses for the State concur in the statement that the belief was general that the homicide was a bad murder, and that appellant ought to be hung, or severely punished.  From the statements of many witnesses it appears that many people in the county regarded the Shipp name as odious.  It was common talk that the Shipps had killed enough people; that they had died with their boots on for many generations; that it only lacked a leader to form a mob that would have hanged appellant, crazy or not crazy. In view of this evidence, we are of opinion that the circuit court erred in not granting the venue asked for.  The language of the statute is plain.  It says that an application for a change of venue is to be granted ''if it appears that the defendant cannot have a fair trial in the county where the proceeding is pending.''  In this case appellant has filed a petition for a change of venue, accompanied by the affidavits required by the statute.  As we have seen, he had a prima facie case made out, and, when the commonwealth resisted the motion, and introduced oral testimony, then it was the duty of the court to weigh all the evidence and decide the case according to the right.  The matter is in the discretion of the court, and ordinarily this court will not reverse the action of the lower court in such proceedings.  But this court has the right of review, and when it appears to us that the discretion of the court has been

abused, it is clearly our duty to reverse. Howard v. Commonwealth, 15 Ky. Law Rep. 873, 26 S. W. 1. In reversing this case we are not in conflict with the opinions delivered by this court in the cases of Sacra, Guy Lyons, and Fletcher v. Commonwealth, 96 S. W. 858, 29 Ky. Law Rep. 1010. In those cases the person assaulted, Mary Gladder, had no relatives whatever in the county of Logan; she nor her father had ever been in that county until the day of the commission of the crime. The distinction between the cases just cited and the one at bar is apparent.

But counsel for the commonwealth contend that, even if the circuit court did err in overruling appellant's motion for a change of venue, the error was corrected by the order of the circuit court summoning a jury from Adair county to try appellant. This was done after an attempt had been made to get a jury from Taylor county. Failing to obtain even one juror, the court then ordered a jury from Adair county. In our opinion, under the peculiar and unusual circumstances of this case, that did not correct the error committed in refusing appellant the change of venue asked. It appears from the record before us that the summoning of the Adair county jury was irregular in itself. Without the knowledge of the trial court, or of the appellant, an important witness for the commonwealth summoned the jury from Adair. This witness was introduced on the trial for the purpose of supplying a motive on the part of the appellant for the killing, other than that already stated. Aside from the fact that the person summoning the jury was himself a witness against the accused, the jury could not help but notice the very bitter, antagonistic feeling that exhibited itself on various occasions in the very presence of the jury. The court room was filled by the friends and relatives of the

deceased, and their conduct was such as to indicate
to the minds of the jury the feeling in Taylor county
against the accused.    The jury was lodged in the
house of Mrs. Coffey, who, together with her daugh-
ter, were witnesses for the commonwealth, and
against the accused, while the wife of the officer in
charge of the jury was a near relative, a cousin, of
both Joe A. Smith and his wife.    While the record
does not show, and we do not impute to either the
officers or the ladies just mentioned, any intentional
wrongful act, yet it must become at once apparent
that, under all the circumstances, the trial jury was
afforded unusual opportunities for learning of the
extensive, bitter public sentiment against the accused,
Shipp, all of which must have more or less influenced
the trial jury to the prejudice of the defendant.

Appellant's counsel contend that the court erred in
refusing to allow him to testify (and to allow him
to prove the same by his son) that his wife confessed
to him in the presence of the son on Saturday before
the killing, her criminal intimacy with Joe A. Smith,
the deceased.    This identical question was before this
court in the case of Shepherd v. Comth., 119 Ky. 931,
85 S. W. 191, 27 Ky. Law Rep. 376, where the court said:
"The sole question here is whether the husband might
show that he got his information from his wife.    That
he did so get it, for the purpose of this discussion, will
be assumed.    Having it, it is for the jury to say to
what extent, if at all, it palliated his act.    But, as
shown in this record, that fact could not be brought
to the knowledge of the jury except defendant proved,
or some one else proved, that defendant had got such
information.    That he got it from his wife could take
nothing from the sting of it.    Its effect upon his mind
and conduct must have been at least the same, if not,
indeed, worse, than if it had been communicated by

some third person.  If one is informed by his wife
that she had been raped, or that a rape had been
attempted upon her person, or that she had been
grossly insulted and assaulted, pointing out the per-
petrator of the act at the time, it would not be unnat-
ural for the husband to act upon that information.
To allow it to be proved that he acted drastically,
without being permitted to show why, or upon what
basis his belief rested, would be applying the rule for
the protection of domestic felicity so as to make it
hurt, instead of help, those for whose benefit it was
primarily intended.  We perceive no good reason for
extending the rule invoked so as to exclude the evi-
dence discussed.  The court is of the opinion that the
evidence should have been admitted to be weighed by
the jury as other facts and circumstances in the case.''
Under this authority, it was error for the court to
exclude the testimony offered, for it tended to show
the motive and the state of mind of the accused at the
time of the killing.

Appellant offered to prove by his son, Leslie, that
he heard his mother confess her intimacy with the
deceased.  The court excluded this, and we think
rightfully so, because it was not shown that this con-
fession by Mrs. Shipp to Leslie was communicated to
appellant prior to the killing of Smith, and for that
reason it could have had no effect or influence upon
the mind of appellant at the time of the homicide.

Notwithstanding the court's refusal to permit ap-
pellant to prove the confession of his wife to him in
the presence of his son, the commonwealth was
allowed to prove in rebuttal, by some 20 or 30 wit-
nesses, the best citizens of the town and surrounding
community, that Mrs. Shipp was a lady whose reputa-
tion for virtue and chastity was good, and above
reproach.  Of this appellant also complains.  Counsel

for appellee contend that this testimony was properly admitted by the court to go before the jury for the purpose of showing that Mrs. Shipp was not guilty of the conduct ascribed to her, and, unless permitted to prove this, the commonwealth had no means of showing the charge made by the husband against his wife was false. This is the first time that this exact question has ever been before this court for decision, at least, we are unable to find any case in any State where this precise question has been passed upon, and no case has been cited in the briefs. We conclude, however, upon reason and authority analogous to the point in question, that the testimony of the wife's good character was incompetent, and the court should not have allowed it to go to the jury. The wife was neither a party to the action, nor a witness in the case; her reputation for chastity was not in issue.

In the case of Cowan v. Cowan 16 Colo. 335, 26 Pac. 934, a similar question was involved. In that case the court said: "The defendant was charged with having committed adultery with one ———, and counsel for appellant complains the court refused to allow them to inquire into the general reputation of said person for chastity. The argument is that, when the reputation for chastity of one is in evidence, it is competent to show such person's good reputation. This rule has no application under the circumstances of this case. The general reputation of the party with whom the adultery is alleged to have been committed was not in issue. She was neither a party to nor a witness in the case. The testimony was properly refused." A similar question was involved in the case of People v. Hurtado, 63 Cal. 288. There the wife of the defendant, under the law of that State, was allowed to testify that before the homicide she had confessed to her husband (the accused) that she had

committed adultery with the deceased. To corrobo-
rate this confession the accused offered to prove that
the wife and deceased had together visited a disrepu-
table house in the city. This evidence was rejected.
In discussing the question thus raised, the supreme
court said: "No direct evidence was offered by the
people to contradict her statement that she had made
the confession to her husband. ·We know of no
principle which would permit the defendant to
strengthen or bolster up the statement of the witness
that she had declared to defendant that she had com-
mitted adultery, by proving that, in fact, she had
committed adultery. Evidence that she had com-
mitted adultery would not tend to prove that she
confessed to her husband she had committed adultery.
It was her statement which would be claimed to be
the cause, or one of the causes, which deprived de-
fendant of his reason—not the truth of her statement
with respect to which he had no personal knowledge.
*   *   *    To admit evidence in itself totally irrele-
vant, because it might, in some degree, render more
probable testimony which is relevant, would be to
open up the way to the trial of side issues, not made
by the pleadings. If it were competent for the defense
to give evidence tending to prove that defendant's
wife had committed adultery, it would be competent
for the prosecution in rebuttal to introduce witnesses
who would swear that the house referred to was a
house of good repute, or that defendant's wife never
entered it. Moreover, it would have been incompetent
for the prosecution, in the absence of evidence on the
part of the defendant tending to prove her adultery,
to cast discredit upon her testimony that she had
confessed her guilt to her husband, by proving that
she was entirely innocent. We are convinced the
objection was properly sustained." The reasoning of

the court in that case applies here. The competency of the confession is based on the fact that it was the cause, or one of the causes, which induced the accused to act as he did. Its truth or falsity had nothing to do with his conduct. In that case the court said that, if it was competent to corroborate the confession, it would likewise be competent to contradict it. Thus a side issue would be presented for trial which might swallow up the principal one which the jury had been called to decide. In Johnson v. Commonwealth, 82 Ky. 116, 5 Ky. Law Rep. 877, the accused was informed that the deceased had whipped his brother. He immediately sought the deceased, and took his life. Evidence as to the facts of the whipping, offered by the accused, was held incompetent. If the reputation of the wife in this case was competent, substantive evidence of her innocence would also be admissible, and, if so, appellant would have the right, to corroborate by any fact or circumstance to corroborate the confession by showing her actual guilt. This would result in introducing side issues calculated to distract the minds of the jury from the real issues they were trying, and lead to confusion and uncertainty; in other words, rest the guilt or innocence of the accused upon the chastity or unchastity of his wife. So here, the fact that the wife, before and since the homicide (for the court allowed proof as to both periods), bore a good reputation does not disprove the fact that she made the confession to the appellant. And it was upon the confession of guilt, and not upon guilt in fact, that the appellant acted. In the case of Riggs v. Commonwealth, 103 Ky. 610, 45 S. W. 866, 20 Ky. Law Rep. 276, the accused on trial for murder was allowed to prove that the deceased had circulated a report that he was guilty of incest. The commonwealth was allowed to give evi-

dence of the truth of the charge. This was held reversible error by this court. So in Martin v. Commonwealth, 93 Ky. 192, 19 S. W. 580, 14 Ky. Law Rep. 95, the common-wealth was allowed to prove that Burks, the deceased, had procured an indictment against Martin for robbery, but it was held to be incompetent to show that the robbery had been, in fact, committed by Martin. In the case of Massie v. Commonwealth. 29 S. W. 871, 16 Ky. Law Rep. 792, it was held competent for the accused to prove the communication to him of slanderous aspersions, with reference to members of the family of accused, made by the deceased whom Massie thereafter sought and killed. But it was said to be wholly immaterial whether the charges were true or false, and, because the commonwealth was permitted to introduce proof conducing to show the truth of the charges, the judgment of conviction was reversed.

The commonwealth can break the force of this alleged confession: First, by showing that the wife did nòt make same, by showing that she was not at the place where the alleged confession was stated to have been made, or that the appellant and son were not there at the alleged time. Second, by impeaching the reputation of appellant and the son for truth and veracity. The attempt to show her general reputation for chastity was such that she would not likely have made such a confession involves a proposition that is new in the law of evidence. In Redus v. Burnett, 59 Tex. 582, a similar question arose. One Redus was sued in Texas on a judgment alleged to have been obtained in Mississippi òn his accounts as executor. Redus defended in Texas, on the ground that he made no such settlement in Mississippi, or authorized any such settlement. The plain-

tiff showed that one Hooper, an attorney at law, represented Redus in making the settlement in Mississippi in which the judgment was rendered, and that Hooper was a man of high character, honest, etc. The court said: "The deceased was not a witness in the case, nor a party to the suit. His reputation was not in issue. The fact that he was a person of good or bad character was not relevant to any inquiry in the case, and a proper objection being raised to the question and answer, as irrelevant, the evidence should have been excluded." The evidence of the reputation of Mrs. Shipp was prejudicial to appellant, and was used with great force by employed counsel for the commonwealth in his argument to the jury, in which he said: "This great concourse of ladies and gentlemen have assembled here, not as a compliment to the speaker, but to attest, by their presence, the high regard in which Mrs. Shipp is held, and her good character." Although the court admonished the jury not to regard this statement of counsel, yet, coupled with the evidence of Mrs. Shipp's good character, it had the effect to impress upon the minds of the jury that, if they acquitted the accused upon the ground of irresponsibility, it was in effect an imputation of bad character to Mrs. Shipp, and that they had to convict the accused to sustain her good name.

Appellant's objections to the instructions of the court are, in the main, based upon an alleged error in No. 6, on the question of insanity. It appears that in No. 6, as copied in the original record, the clerk, by mistake, inserted the word "not," which materially changed the sense thereof, but has since been corrected by another and true copy of the instruction. The other instructions fairly presented the law of the case, with the exception of No. 2, on the subject of voluntary manslaughter, which reads as follows: "If

you believe from the evidence beyond a reasonable
doubt that the defendant, James A. Shipp, did shoot
and kill the deceased, Joe A. Smith, and further be-
lieve that said shooting and killing was done in sudden
heat and passion, and without previous malice, you
should find him guilty of manslaughter, and fix his
punishment in the State penitentiary for a period of
not less than 2 nor more than 21 years." To convict
appellant under this instruction the jury had to be-
lieve that he shot and killed the deceased, and that the
shooting and killing was done in sudden heat and
passion, and without previous malice. The jury was
not authorized to convict him, under this instruction,
by the evidence introduced. It is true that the testi-
mony tended to show that he was laboring under
passion, but that passion was aroused several days
before the killing, and the jury could not find that the
killing was without previous malice. The instruction
did not require the jury to find that the killing was
willful and unlawful; it only required the jury to
believe, beyond a reasonable doubt, that the killing
was done while appellant was laboring under passion
which was aroused previous to the time of the killing.
This court has recently decided that it is not neces-
sary, in such an instruction, to insert that the killing
must be feloniously done. The court, in lieu of No. 2,
should have given an instruction, in substance, that,
if the jury believed from the evidence, beyond a rea-
sonable doubt, that the defendant, James A. Shipp,
did willfully, and not in self-defense, shoot and kill
Joe A. Smith, and that the shooting was done in
sudden affray, or sudden heat and passion, and with-
out previous malice, and under such provocation that
was ordinarily calculated to excite passion beyond
control, they should find him guilty of manslaughter,

and fix his punishment, etc.  See case of Shepherd v. Commonwealth, supra.

The fourth and last assignment of error, presented by appellant's counsel, is that of the misconduct of employed counsel for the commonwealth during the trial.  While it is true that the court sustained appellant's objections, in every instance, during the trial, to improper questions, they were repeated so often they must necessarily have left an impression upon the minds of the jury hurtful to appellant.  This conduct of counsel was reprehensible, and the court should not have permitted it.  It would be tedious, and is unnecessary, to cite and comment upon all this prejudicial matter, but we will give a few instances which will illustrate his offenses.  When the appellant was being cross-examined, by this counsel, these questions were asked him, to-wit: ''Q. You say you didn't want to have trouble with anybody?  A. Yes, sir.  Q. You have killed one man before this, have you not?''  This court has often said that it was error to undertake to impeach a defendant or witness in this manner.  This was very hurtful to the appellant.  These questions were asked Sanders, a witness for the defendant, by same counsel ''Q. Did you ever have occasion to arrest him (referring to appellant), or to take him home, or to get him to leave town?  A. No, sir, I never did.  Q. Were you here at the time he got into trouble with Coakley?''  These questions were very improper, for the reason stated.  He asked Patterson, a witness for the defense: ''Are you the same man that testified on the motion for a change of venue that 14 generations of the Shipp family had died with their boots on?''  This was an effort to show by indirection that public sentiment was strongly against appellant in the county, and that not only Shipp, but his ancestors, were lawless and desperate men.

Under the Constitution and laws of this State, appellant was entitled to a fair and impartial trial of the charge against him, and, from the record before us, we think this was not accorded him.

For these reasons, the judgment of the lower court is reversed, and cause remanded for further proceedings consistent with this opinion.

Whole court sitting.