CASE 85—INDICTMENT—MAY 9.

## Dilger v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. ARREST.—When a public offense is committed within the hearing of a peace officer, and when he is so near that he can not be mistaken as to the offender, it is committed within his presence within the meaning of the provision of the Code authorizing a peace officer to make an arrest without a warrant, "when a public offense is committed in his presence."

2. DISMISSAL OF INDICTMENT.—The statute which provides that before the court shall permit a Commonwealth's attorney to dismiss an indictment, such attorney shall be required to file a statement in writing, setting forth the reasons for such dismissal, does not apply where an indictment is dismissed and the case re-submitted to the grand jury.

3. SAME.—The defendant in an indictment is not prejudiced by the dismissal of the indictment, a re-submission to the grand jury and the return of a new indictment charging the same offense.

4. CHANGE OF VENUE.—Upon an application for a change of venue the burden is upon the accused to show that he can not obtain a fair trial in the county where the proceeding is pending. And while the decision of the lower court upon such a motion is subject to review by this court, it will ordinarily hesitate to disturb his conclusion where the testimony is conflicting.

Dilger v. Commonwealth.

In this case, as a very large majority of the witnesses were of the opinion that the accused could obtain an impartial jury and a fair trial in the county where the proceeding was pending, and the judge refused to change the venue, this court will not disturb his conclusion.

5. SAME.—As the right to a change of venue is the creature of the statute, the extent of its exercise may be limited by the statute. Therefore the legislature had the power to provide that "not more than one change of venue, nor application therefor, shall be allowed to any person in the same case."

·6. EVIDENCE.—Upon a trial for murder, evidence as to the deceased being a peace officer, and engaged in his duties as such when he was killed. was competent, although these facts were not set out in the indictment.

·7. RIGHT OF OFFICER TO KILL ONE RESISTING ARREST.—Where an officer is attempting to make an arrest for felony he may use such force as is necessary to capture the felon, even to killing him when in flight. But where it is a misdemeanor for which the arrest is attempted to be made, the officer can not kill the offender unless he is resisting to such an extent as to place the officer in danger of loss of life or great bodily harm.

The instructions in this case, considered as a whole, conform to this view of the law.

·8. KILLING OF PEACE OFFICER.—Where an officer, in attempting to make an arrest, is killed by one knowing him to be an officer, it is murder, although the doer may not have any particular malice. Therefore it was not necessary, in this case, that the jury should be told that the killing must have been malicious.

BEN. S. ROBBINS FOR APPELLANT.

1. The court erred in dismissing the first indictment and re-submitting the case to the grand jury. The dismissal was clandestinely had on a day when the case was not set for trial, and therefore the appellant had no opportunity to except, and can not be prejudiced by his failure to do so.

2. The appellant's motion for a change of venue should have been sustained. Appellant, by his petition and affidavits, presented a *prima facie* case, and the burden was then thrown upon the Commonwealth. (Johnson v. Commonwealth, 5 Ky. Law Rep., 877.)

·3. The court erred in refusing to entertain appellant's second motion for a change of venue. Sub-sec. 1 of sec. 1, art. 4, chap. 12, of the General Statutes, which provides that not more than one application for a change of venue shall be allowed, is unconstitutional.

·4. The right of an officer to make an arrest is derived solely from the statute, and when he does not act in strict accordance with statutory

Dilger v. Commonwealth.

requirements he is entitled to no more consideration than any other trespasser. (Criminal Code, sec. 36.)

5. The testimony tended to show that the officers were unlawfully attempting to arrest appellant for a mere imaginary misdemeanor, and instructions based upon that idea should have been given to the jury.

6. The court erred in instructing the jury that under certain circumstances· an officer making an arrest may use "unnecessary violence." (Head v. Martin, 9 Ky. Law Rep., 45.)

FRANK PARSONS, COMMONWEALTH'S ATTORNEY, FOR APPELLEE.

1. The Commonwealth may dismiss an indictment and re-submit the case to the grand jury at any time before the accused is put in jeopardy, and to that end notice to the accused is not necessary; nor is it necessary to file written grounds in support of the motion. (Williams v. Commonwealth, 78 Ky., 93.)

2. There was no evidence sufficient to authorize a change of venue; besides, that question is always within the sound discretion of the trial court, not to be interfered with by the appellate court unless there be abuse of discretion; and, in Kentucky, not then unless the court, upon consideration of the whole case, is satisfied the substantial rights of the defendant have·been prejudiced thereby. (Johnson v. Commonwealth, 5 Ky. Law Rep., 877; Wrenn v. Commonwealth, MS.. Op., November 11, 1886; State v. Barton, 8 Mo. App., 15; State v. Rhea, 25 Kan., 576; People v. Graham, 21 Cal., 261; Honneycutt v. State, 8 Baxter, Tenn., 371; Poe v. State, 10 Lea, 673; State v. Williams, 2 McCord, S. C., 383; Wright v. Com., 33 Grat., 880; State v. Ford, 37 La., 443; Bissott v. State, 53 Ind., 408; Dupree v. State, 2 Tex. Ap., 612; People v. Mahoney, 18 Cal., 180; Anderson v. State, 28 Ind., 22; Boswell v. Flockhart, 8 Leigh, 364; Porter v. State, 3 Lea, 406; Hyde v. Harkness, 1 Ida. N. S., 601; Walston v. Com., 16 B. M., 15; Wills v. Lochrane, 9 Bush, 547; Parker v. Commonwealth, 12 Bush, 191; Kennedy v. Commonwealth, 78 Ky., 447.)

3. The right to a change of venue is a creature of the statutes, and the terms and conditions of the statute must, in every case, be fully complied with before this right can be allowed. Besides, the accused was not prejudiced by the refusal to change the venue, as he obtained a jury, duly and legally qualified, without exhausting the peremptory challenges allowed him by law. (Grissom v. State, 8 Tex. Op., 386; Campbell v. State, 9 Tex. Op., 27; Hicks v. Com., 13 Chic. L. N., 386; Webb v. State, 9 Tex. Op., 490; State v. King, 11 Mo. App., 92; Posey v. State, 73 Ala., 490; State v. Hale, 22 N. W. Rep., 682.)

4. Where there is any evidence before the court conducing to show the· guilt of the accused, the judgment of conviction can not be reversed· on the sole ground· that there was not sufficient evidence to support

the verdict. (Vowells v. Commonwealth, 83 Ky., 193; Tupper v.. Commonwealth, 1 Met., 6; Johnson v. Commonwealth, 9 Bush, 224; Kean v. Commonwealth, 10 Bush, 190; McDaniel v. Commonwealth, 6 Bush, 326.)

5. It was competent to prove that the persons killed were police officers, acting in the discharge of their duty, although the indictment did not so allege. (1 Russell on Crimes, sec. 555; 2 Bishop's Criminal Practice, secs. 506 and 885; Chitty's Criminal Law, 172; 9 Coke's Rep., 68; Boyd v. State, 17 Ga., 196; State v. Green, 66 Mo., 645; Alsop v. Commonwealth, MS. Op., 1882.)

6. Alleged error in refusing to permit a witness to answer a question can not be considered unless it appear in the record what answer it was expected the witness would make. (Chrystal v. Commonwealth, 9 Bush, 669; Nichols v. Commonwealth, 11 Bush, 575; Fenton v. Commonwealth, 82 Ky., 549.)

7. In instructing the jury it is the court's duty to omit such degrees or grades of the offense as are not suggested by evidence, and to instruct only as to those which are so suggested. (Bush v. Commonwealth, 78 Ky., 268; Curtis v. State, 36 Ark., 264; State v. Banks, 73 Mo., 952.)

8. The instruction defining the office and duty of policemen of the city of Louisville is correct, as a policeman is a peace officer. (Criminal Code, sec. 26.) And if any one has committed an offense in the presence of such officer, it is his duty to arrest the offender, using such force as is requisite for the purpose. (Criminal Code, sec. 395.)

9. The instructions as to murder and manslaughter, based upon the fact that the deceased was a peace officer acting in the discharge of his duty, correctly presented the law of the case. (Douglass v. State, 8 Texas App., 520; Mockabee v. Com., 78 Ky., 380; Coffman v. Com., 10 Bush, 495; Fleetwood v. Com., 80 Ky., 1; Creighton v. Com., 83 Ky., 142; Creighton v. Com., 84 Ky., 100; 4 Blackstone, 201; East's Pleas of the Crown, 303–314.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, Charles Dilger, is under sentence of death. His counsel urge that the verdict is not the result of a fair trial, but of popular clamor. In a case like this one, where, apparently at least, affluent circumstances and influential friends are lacking, those who administer the law should be especially alert, and stand like a wall between the passion of the hour and the object of

it, insuring to him, however humble, an impartial trial.
Without this barrier no citizen is safe.  Remove it and
the liberty, or what is more, the life of every individual
is in danger.  If the accused be given but the mere form
of a trial, and made the victim of excited public senti-
ment or maddened popular feeling, then a degrading
judicial farce is enacted, and an example furnished likely
to be far-reaching for evil.  Moved by these considera-
tions, we have given this case as careful an examination as
lies within our power.

Upon the night of August 15, 1888, and at about the
midnight hour, the appellant was beating his mistress,
Mary Burns, in an upstairs room occupied by them, in
the city of Louisville.  Her cries attracted the attention
of Joseph Rosenberg and James W. Jones, who were the
two policemen upon that beat, and they at once hastened
to the house.  They located the room where the offense
was being committed by the noise, but just before they
entered it the appellant stopped beating her, the cries
ceased, and they knew of it, therefore, only by hearing
and not by sight.  The accused declined to be arrested
by them, claiming that he had done nothing in their pres-
ence, and that therefore they could not arrest him with-
out a warrant, since section 36 of our Criminal Code
provides:

"A peace officer may make an arrest—

"1. In obedience to a warrant of arrest delivered to
"him.

"2. Without a warrant, when a public offense is com-
"mitted in his presence, or when he has reasonable

Dilger v. Commonwealth.

·" grounds for believing that the person arrested has com-
" mitted a felony."

The appellant testifies that upon this mere objection to
arrest being made by him, and without any action upon
his part, they commenced beating him with their "bil-
lies." His defense, therefore, was, that the attempted ar-
rest was unlawful; and if not, that unnecessary force
was used, and that he acted in self-defense. His testi-
mony is, to some extent, sustained by other evidence,
but in our opinion it is overborne by other positive and
circumstantial testimony, showing clearly that upon their
offering to arrest him he at once began to use his deadly
bowie-knife, driving it into the brain of the one and the
heart of the other, and killing them both almost in-
stantly. It is plain, from the verdict, that the jury ac-
cepted this latter view of the bloody transaction.

The officers were dressed in their police uniform, and
well known to the appellant to be policemen.

Unquestionably they had a right to make the arrest.
While the offense of beating the woman was not com-
mitted in their sight, yet it was within their hearing, and
when they were so near that they could not be mistaken
as to the offender. This was in their presence, as con-
templated by the law. Moreover, the instructions given
to the jury told them that the offense for which the ar-
rest was attempted must have been committed in the
presence of the officers.

This conviction is for the killing of officer Jones.

An indictment was found September 17, 1888. The
next day the appellant pleaded to it. It was then set for
trial on September 25, 1888. Upon the last named day

the accused had it continued until October 11, 1888.
October 10, 1888, an order was made upon the motion of
the attorney for the State dismissing the indictment, and
reciting that the case was re-submitted to the grand jury,
and the defendant held in custody.  This was done with-
out the knowledge of the appellant or his attorney, and
without any reason therefor being entered of record.
October 11, 1888, he moved the court to set aside this
order.  The motion was overruled.  He complains of
this action.

The statute of April 9, 1873, provides: " That here-
" after, before the court shall permit any Commonwealth's.
" attorney to dismiss any indictment, or enter a *nolle pro-*
" *sequi* in any case, such attorney shall file a statement in
" writing, setting forth the reasons for such dismissal or
" such failure to prosecute, which statement shall be signed
" by said Commonwealth's attorney, and an order shall
" be made on the record book of said court, and it shall
" remain with the papers of such prosecution as a part of
" the record."   (General Statutes, page 185.)

It was enacted because of the improper dismissal of in-
dictments in some of the courts, and is merely directory.
This dismissal was not one within the meaning of the
law.  It relates to cases where, as the result of the dis-
missal, the defendant is discharged.  This is plainly so.
Here the case was re-submitted to the grand jury, the
accused held in custody, and a new indictment soon re-
turned.  It was not a discontinuance of the prosecution.

Moreover, we are unable to see how the appellant could
have been prejudiced.  The new indictment charged the
same offense.  No jeopardy had attached to the accused

under the former one. He did not attempt to plead the order of dismissal in bar of a prosecution upon the second indictment. It operated merely as would an admission of defect in the first indictment, and a confession of demurrer to it.

Prior to the amendment of April 1, 1880, to the General Statutes, an accused was entitled to a change of venue, as a matter of right, upon the filing of his verified petition, supported by the affidavits of two or more credible persons, not of kin to or counsel for him, and who were acquainted with the state of public opinion in the county objected to, stating that he could not obtain a fair trial therein. At the time named, however, it was provided: "And the court shall, on such motion, hear all "witnesses that may be produced by either party, and "from the evidence *determine* whether or not the appli-"cant is entitled to change of venue."

In the language of the statute, the application is to be granted "if it *appears* that the defendant can not have a "fair trial in the county where the proceeding is pend-"ing." It is his motion. The burden is upon him to show that he can not obtain such a trial. The lower court determines it as he does any other question. His decision is subject to review by this court; but, as was said by it in the case of Hasson v. the Commonwealth (March 16, 1889), "where the testimony is conflicting it "would ordinarily hesitate to disturb his conclusion."

In this instance the killing created, at the time, great excitement. There was then much indignation against the appellant. The newspapers gave accounts of it calculated to influence and inflame public opinion. The

police force of the city was concentrated, and a military organization called out because of apprehension of mob violence to the accused. It is shown, however, that when the application for a change of venue was heard, this excitement had in the main, if not altogether, subsided. New events had withdrawn public attention from the case. With the lapse of time the public pulse beat regularly. A large number of witnesses were introduced upon the trial of the motion for a change of venue. Some of them were but slightly and others more acquainted with the state of public opinion. A very large majority of them were of the opinion that the appellant could obtain an impartial jury and a fair trial in the county, and the judge being of this opinion, refused to change the venue. He probably knew most of the witnesses. He observed their manner and conduct. He was upon the ground, and for many reasons had a better opportunity to judge of the weight to be given to the evidence than we can by reading it upon paper. Upon such a state of case his judgment should not be reversed. The city has probably two hundred thousand people. The county also embraces a considerable country population, and it was fair to presume that from all of them an unprejudiced jury could be selected not subject to be influenced by public sentiment. The sequel justified the court's action. One trial, thereafter had, resulted in a hung jury. Upon the second and last one a jury was obtained without either side exhausting its peremptory challenges.

Subsequent to the first trial the appellant offered to file a petition and affidavits, prepared *in propria forma*, and

entered a second motion for a change of venue. The court refused to entertain it.

The statute provides: " Not more than one change of " venue, nor application therefor, shall be allowed to any " person in the same case." (General Statutes, chap. 12, art. 4, sec. 8.) It is urged that this provision is in conflict with section 12 of the Bill of Rights, which guarantees to an accused " a speedy public trial by an impartial " jury of the vicinage," and is therefore unconstitutional and void. This point is not presented by the record in this case, because no notice was given that this second application would be made, and we pass it by with the suggestion, that if it had been properly made, yet no constitutional question would in fact have been involved. It is true the organic law guarantees to an accused a fair trial, but a change of venue is only one means to this end. The right to it is derived solely from the statute. In the absence of it no such right would exist, and yet, by reason of the constitutional provision, an accused could not be tried save by an impartial jury. As the right is the creature of the statute, the extent of its exercise may be limited by the statute.

The evidence as to the deceased being a peace officer, and engaged in his duties as such when he was killed, was competent, although these facts were not set out in the indictment.

Mr. Wharton, in his work on Homicide, says: " If a " constable, watchman or other minister of justice be " killed in the execution of his office, the special matter

" need not be alleged, but the offender may be indicted
" generally of murder by malice prepense."

It is, however, urged that the jury were, in substance,
instructed that under certain circumstances the officer
might use unnecessary violence, although the statute says
that "no unnecessary force or violence shall be used in
" making the arrest." In other words, that in order to
make an arrest for mere misdemeanor the officer may
slay the offender. Our statute is silent, save as above
cited, as to the force he may use. We must, therefore,
turn to the common law for guidance. By it, in a case
of felony, he may use such force as is necessary to cap-
ture the felon, even to killing him when in flight.
Where it is a misdemeanor, however, the rule is other-
wise. It is his duty to make the arrest, but unless the
offender is resisting to such an extent as to place the
officer in danger of loss of life or great bodily harm, the
latter can not kill him. He can only do so, or inflict
great bodily harm, when, by reason of resistance, he is
placed in the like danger. If he meet with resistance, he
may oppose sufficient force to overcome it, even to the
taking of life. This much is demanded, else the law
would go unenforced, and the officer be at the mercy of
the offender. If he puts the life of the officer in danger,
then the latter may, *se defendendo*, slay him; but he must
use no greater force than is reasonably necessary, or ap-
parently so, for his protection.

A careful reading of the instructions satisfies us that
when considered as a whole they conform to this view,
and that the jury did not understand from them that the
officers had a right to use unnecessary force, as, for in-

stance, to kill the accused or inflict upon him great bodily harm because of a mere refusal to go with them. If some portions of the fourth instruction appear to be open to this objection, yet, when considered in connection with the balance of it, and the sixth one, and also the one given upon the request of the accused, we do not think the jury could have understood the law of the case as otherwise than above indicated.

The law did not require that they should have been told the killing must have been malicious. The officer is the minister of the law; he represents its majesty; his person is therefore clothed with a peculiar sanctity. An assault upon him, when properly engaged in the execution of his duty, is an assault upon the law, and if he be stricken down at such time, as was ruthlessly done in this instance, by one knowing him to be an officer, it is murder, although the doer may not have any particular malice. (4 Blackstone, page 201; 1 East, page 303.)

The appellant has had two trials. There were four postponements of the case before the first trial and one thereafter. A careful inspection of the record satisfies us that he is guilty under the law; that he has been tried in accordance with it by an impartial jury; and it only remains for us, unpleasant as is the duty, to affirm the judgment, which is accordingly done.