## Fitzpatrick v. Commonwealth.

(Decided October 2, 1925.)

### Appeal from Johnson Circuit Court.

1. Judges—Specification of Cases to be Tried by Special Judge in Letter from Governor Held Substantial Compliance with Statute.—Specification of cases in which special judge was to preside, in letter to him, signed by Governor and referring to accompanying commission, held substantial compliance with statute.

2. Criminal Law—No Error in Refusing Continuance for Absence of Counsel, where Defendant had Good Lawyers Present.—Where defendant had a number of good lawyers present, there was no error in refusing continuance because of absence of some of his counsel.

3. Criminal Law—Parol Testimony as to Official Character of Peace Officers Held Admissible in Prosecution of One for Murder.—Parol testimony as to official character of peace officers held admissible in trial of one of them for murdering one whom they were attempting to arrest.

4. Homicide—Testimony as to Conversation with Women Being Pursued by Defendant and Other Officers at Time of Murder Held Competent.—In prosecution of deputy constable for murder in attempting to arrest deceased, whom defendant and other officers met while pursuing two lewd women suspected of moonshining, witness' testimony that he stopped and talked with the women, and that they told him they had to go home as officers were after them, held competent as showing why they went home and explaining situation.

5. Homicide—Cross-Examination on Defendant Constable's Knowledge that he was Beyond Limits of Town at Time of Murder Held Improper.—In prosecution of deputy constable for murder in attempting, with another such offcer and town marshal, to arrest deceased, cross-examination of defendant and his fellow officers, on fact that they knew they were beyond limits of town at time of homicide, held improper, as, their jurisdiction being coextensive with county, such evidence was immaterial.

6. Homicide—Evidence as to Statements to Defendant and Fellow Officers After Homicide, and His Instructions to Latter Held Admissible.—In prosecution of deputy constable for murder in attempting, with other officers, to arrest deceased, statements of

persons who gave defendant and his fellow officers information after homicide, testimony that some one asked defendant to take him to station in his car, and defendant's instructions to other officers when he left them, held admissible as explaining why they went to different places, why defendant was absent when certain other things occurred, and why other officers did what they did while he was gone.

7.  Criminal Law—Evidence of What was Said Admissible, if Necessary to Show Purpose of What was then Done.—Evidence of what was said at time is admissible, if necessary, to show purpose of what was then done.

8.  Criminal Law—Proof of Deceased's Soberness Held Admissible in Chief.—In murder trial, court did not err in allowing Commonwealth to introduce in chief its proof that deceased was sober, though such evidence might have been admitted in rebuttal; matter being optional with Commonwealth.

9.  Homicide—Testimony of Deceased's Wife that he was Sober and Had no Pistol When He Left Home Held Properly Admitted.— In murder trial, court properly allowed deceased's wife to state that her husband was sober when he left home and had no pistol, though that was 35 miles away and some time before shooting.

10.  Criminal Law—Testimony that Deceased had Not Been Under Influence of Liquor for Year Rebuttable by Testimony as to Seeing Him Drunk Within Such Time.—In murder trial, testimony of deceased's wife in chief that he had followed drinking, but had not been under influence of liquor for year or more, may be rebutted by testimony as to seeing him drunk about a month before shooting.

11.  Homicide—Testimony as to What Witness said to Defendant Morning After Homicide Held Inadmissible Except in Part.—In murder trial testimony as to what witness said to defendant on morning after homicide held inadmissible, except question whether deceased showed fight or had a gun and defendant's reply that if he had a gun defendant never saw it.

12.  Witnesses—Cross-Examination of Eye-witness as to Reason for Presence and Acts Held Permissible to Show Bias.—Cross-examination of witness as to why he was present at time and place of homicide and did what he did held permissible to show his bias and affect weight of his testimony.

13.  Criminal Law—Allowing Witness to Read Paper Not Proved Correct, nor Identified as Official Record of, Testimony on Former Trial, Held Error.—Permitting witness to read to jury paper purporting to be testimony of another on former trial, but not proved correct nor identified as official record, held error.

14.  Witnesses—Foundation Necessary to Contradict Witness by Testimony as to Statements at Other Times Stated.—Before admitting testimony as to witness' statements at other times, differing from his testimony, witness should be asked if he made statement at time indicated and in presence of persons named.

15. Witnesses—Record May be Introduced to Rebut Witness' Testimony as to Making Certain Answer on Former Trial.—Court should allow attorneys on either side to ask any witness if he had made certain answer on former trial and to read question and answers from record, which may then be introduced in rebuttal, when properly proved or certified, to show that witness did not then make such answer.

16. Witnesses—Question to State's Witness as to Whether he had been Convicted of Moonshining or was so Engaged at Certain Time Held Properly Excluded.—In murder trial, court properly refused to allow defendants to ask state's witness if he had been convicted of moonshining or was so engaged at time he testified to meeting deceased and another.

17. Homicide—Testimony as to Meeting Man and What he did Held Admissible to Identify Him as Deceased and Show Whether he was Drunk.—In murder trial, testimony of state's witness as to meeting man and what he did held admissible to identify him as deceased and show whether he was drunk.

18. Homicide—Testimony as to Deceased's General Reputation in Community Held Admissible.—In murder trial, witness' testimony that he knew whether deceased had general reputation in community as dangerous man when under influence of whiskey and what that reputation was, held admissible.

19. Homicide—Injury Must have Contributed to Deceased's Death to Convict.—To convict of homicide, injury inflicted by defendant must have contributed to deceased's death.

20. Homicide—Cause of Fall from Horse, Resulting in Injury from which Deceased Died, Held for Jury.—Whether deceased's fall from horse, resulting in injury to skull from which he died, was due to weakness from loss of blood from being shot in back by defendant, or horse's fright by automobiles, held for jury.

21. Homicide—Defendant Not Entitled to Peremptory Instruction, Though Fall Causing Injury from which Deceased Died was Not Due to Wound.—Defendant was not entitled to peremptory instruction in murder trial, even if deceased's fall from horse, causing injury from which he died, was not due to his being wounded, as defendant might be punished under indictment for unlawful shooting, though deceased did not die from wound.

22. Assault and Battery—Proper Instruction as to Offense and Punishment, if Deceased's Wound did Not Contribute to Fall Resulting in Fatal Injury, Stated.—In trial for murder of one dying from injury received as result of fall from horse after being shot, court should have told jury that, if wound did not contribute to fall, but shooting was not excusable, they should convict of willful shooting, if done willfully and with malice aforethought, and fix punishment at confinement in penitentiary for one to five years, or if not done with such malice, but in sudden heat and passion, at fine of from $50.00 to $500.00, confinement in jail for six months to one year, or both.

23. Homicide—Instruction Held Erroneous as Improperly Narrowing Defendant Officer's Right to Use Force in Arresting Deceased.—Instruction that, if deceased shot to kill defendant officer, not in necessary self-defense, while defendant was attempting, in good faith, to arrest him for drunkenness, he committed felony in defendant's presence, and latter was authorized to use force necessary "to overcome such resistance" to arrest, even to taking deceased's life, etc., held erroneous as improperly narrowing defendant's right by quoted words.

24. Homicide—Officer May Take Life of One Charged with Felony, if Absolutely Necessary to Effect Arrest or Prevent Escape.—Officer may take life of one charged with felony, if absolutely necessary to effect his arrest or prevent his escape from custody.

25. Criminal Law—Argument Reflecting on Actions and Motives of Defendant and Fellow Officers Before Homicide Held Improper.—In murder trial, argument of state's attorney, reflecting on defendant peace officer for leaving his family and going with fellow officers, on their motives in following lewd women they were pursuing when they met deceased, and on defendant's being appointed a deputy constable, held improper.

26. Criminal Law—Frequent Repetition of Questions to Defendant and Fellow Officers, as to Whether they had Warrant for Deceased's Arrest, etc., Held Prejudicial Error.—In trial of deputy constable for murder in attempting to arrest deceased, frequent repetition of questions to defendant and fellow officers as to whether they had warrant for deceased's arrest and had made affidavit against women they were following when they met deceased or sought to arrest them for walking streets, held improper and prejudicial.

27. Arrest—Arrest for Misdemeanor, Not Committed in Officer's Presence, Not Permitted by Statute.—Criminal Code of Practice, section 36, is peremptory, and does not allow peace officer to make arrest for misdemeanor, unless committed in his presence, though he has reasonable grounds to believe that such offense has been committed.

C. B. WHEELER, BLAIR & HERINGTON, A. J. KIRK and KIRK & WELLS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Manuel Fitzpatrick, Frank Caudill and John Green were indicted in the Johnson circuit court for the murder of W. L. Brown. It was charged in the indictment that each of the defendants unlawfully, wilfully, feloniously and with malice aforethought killed Brown by shooting

him with guns and pistols; that each of the defendants did the shooting and wounding, and each of them was present and wilfully, feloniously and with malice aforethought killed and advised and incited the others to do the shooting. The defendants demurred to the indictment; the demurrer was overruled. The regular judge could not sit in the case. A special judge was appointed and on the trial of the case the jury failed to agree. Subsequently W. D. O'Neal was commissioned by the Governor as a special judge on November 10, 1924. When the case came on for hearing before him the defendants objected to his jurisdiction to try the case on this ground: The commission from the Governor appointed him as special judge of the Johnson circuit court, beginning November 11, 1924, to try certain cases mentioned in designation, dated November 10, 1924, the regular judge being disqualified to preside in said cases. Accompanying the commission and of the same date there was a letter from the Governor to Judge O'Neal naming the cases in which he was to preside, and among them was the case in controversy. While the regular mode would have been to have specified the cases in the commission, when they were specified in a separate writing signed by the Governor and referred to in the commission, this was a substantial compliance with the statute and the court properly overruled the objection to the jurisdiction of the judge.

The defendants filed an affidavit for a continuance. The court allowed the statements of the witnesses to be read as their deposition and overruled the motion for a continuance. While some of the defendant's lawyers were absent, he had present a number of good lawyers, and there was no error in refusing a continuance of the case because of the absence of some of his counsel.

Fitzpatrick was placed on trial and at the conclusion of the trial was found guilty of voluntary manslaughter and his punishment fixed at five years in the penitentiary. He appeals.

The facts of the case as shown by the weight of the evidence are these:

Frank Caudill was the town marshal of Paintsville. John Green was a deputy constable and so was Manuel Fitzpatrick. About dark on Sunday evening Caudill and Green were following out of town two lewd women, whom they suspected of moonshining; Fitzpatrick joined them. When they had followed these women about a mile from

Paintsville and after the women had turned in at their gate to go home, a man came riding down the road, meeting them. Green, who was in front, said the man was too drunk to be allowed to pass. When he reached Fitzpatrick, Fitzpatrick told him to stop and then told him to consider himself under arrest. He asked who Fitzpatrick was. Fitzpatrick told him that he was Manuel Fitzpatrick, an officer, and put his hand upon the man's person. The man then drew his pistol and fired at Fitzpatrick. Fitzpatrick, seeing what was coming, fell to the ground and the ball missed him. The man having got loose from Fitzpatrick rode rapidly down the road towards Paintsville, shooting at the officers, and paying no attention to the orders to stop. Fitzpatrick got up and shot at him as he fled. Caudill, who was near Fitzpatrick, also drew his pistol and shot. But, according to their evidence, the man had shot three times at them before either of them had shot. They then followed him down the road as fast as they could on foot but did not overtake him. In going down one of the streets of Paintsville, as an automobile with a bright light passed him and another automobile was coming up behind him, Brown, while still riding rapidly, fell from his horse, his head striking the curb and fracturing his skull at the base of the brain. He was picked up by one of the automobiles and taken to the hospital, where he died without regaining consciousness. Beside the injury to his skull he had a bullet hole in his back, the ball having lodged in the lining of the abdomen. The officers followed on behind him and testified that they picked his saddle bags up in the road, which contained two jars of liquor, and subsequently found in the road not very far from where the shooting occurred his pistol, from which three shots had been fired. The officers testified that the man was very drunk when he came up to them and they sustain this by proof of several witnesses who had been with him and drank with him not long before this shooting. On the other hand, the Commonwealth proved by several witnesses that there was no odor of whiskey about the man when found on the street or when taken to the hospital and that he was sober when last seen before the shooting. The Commonwealth also introduced proof tending to show that the pistol the officers testified they found was not deceased's pistol. While the above is in substance the state of facts shown by the weight of the evidence, there is

hardly a fact in the case on which it may be said there is not a conflict of evidence.

The court rejected the parol testimony as to the official character of the officers. This was improper.

"The direct testimony of public officers is generally admissible to show the status of such officers. For example, the testimony of persons for trespass on real estate to show that they were members of the board of health is competent to prove their official capacity. And on the trial of an indictment for an assault on a police officer, evidence that the person assaulted was at the time of the offense acting as such officer, and that he had publicly acted as such for some time previously, is sufficient to prove that he was a police officer." 22 R. C. L., p. 398.

The evidence of the witness Estep should have been admitted to the effect that he stopped the lewd women and talked with them and they told him that they had to go home as the officers were after them and they could not stay with him. This declaration showed why these women went home and was therefore competent as explaining the situation.

On cross-examination of the different officers great stress was placed upon the fact that they knew when they were a mile beyond the limits of Paintsville. This should not have been permitted, for the jurisdiction of the officers was coextensive with the county and it was entirely immaterial that they were beyond the limits of Paintsville. Partin v. Commonwealth, 197 Ky. 840.

After the officers came into Paintsville they met different persons who gave them information. The statements of these persons to them should have been admitted, as it explained why they went as they did to different places. Some one asked Fitzpatrick to take him to the station in his car. This should have been admitted, for it explained Fitzpatrick's absence when certain other things took place. The instructions which Fitzpatrick gave the other two officers when he left them should also have been admitted, for this explains why they did what they did while he was gone. When what is said at the time is necessary to show the purpose of what was then done the evidence is admissible; for the verbal act is necessary to explain the physical act.

The court did not err in allowing the Commonwealth to introduce in chief its proof as to Brown being sober.

This evidence might have been admitted in rebuttal, but it was optional with the Commonwealth how it would introduce its testimony on the subject. The court properly allowed Mrs. Brown to state that her husband was sober when he left home and had no pistol, although this was thirty-five miles away and some time before the shooting. If on another trial Mrs. Brown states in chief that her husband followed drinking but had not been under the influence of liquor for a year or more, the evidence of Carl Howes and Warren Litteral that they saw him drunk about a month before the shooting may be admitted. The conversation of J. M. Adams with Fitzpatrick on the morning after the homicide in so far as Adams related what Adams said to Fitzpatrick should not have been admitted. The only material part of this evidence which should have been admitted is the following: ''I said, 'did he show fight or have a gun,' and he said, 'If he had a gun I never saw it.' '' All the rest of the conversation should have been excluded.

The court should have permitted Victor Clawson to answer the questions asked him on cross-examination showing why he was present and why he did what he did, for these things went to show his bias and affected the weight to be given his testimony. 1 Greenleaf on Evidence, section 446.

The court erred in allowing Eula Conway to read to the jury the paper purporting to be the testimony of Melissa Osborn on the former trial. This paper was proved in no way to be correct and was not identified in any way as an official record. No proper foundation was laid to contradict Dr. Holbrook by showing that he had made at other times statements different from his testimony in court, and the court properly so ruled. Before such testimony may be admitted the witness should be asked if he made the statement at the time indicated and in the presence of the persons named.

The court should have allowed the attorneys on either side to ask any witness if he had made a certain answer on the former trial and to read the questions and answers from the record. To contradict the witness the record may then be introduced in rebuttal when properly proved and properly certified, and it may be thus shown that the witness did then make this answer. The court properly refused to allow the defendants to ask Dennis Blevins if he had been convicted for moonshining, or if he was not so engaged at the time he testified to meeting

Pence and Brown. There was enough in the testimony of Splain to submit to the jury the question whether the man whom Splain met was W. L. Brown, and the court properly so ruled. The like testimony of Wilson Grace was properly admitted, and the witness should be allowed to state what he saw the man do and to tell fully his actions, for this served not only to identify the man but also to show whether he was drunk or not. Guy Williams should be allowed to state that he knew the general reputation of Brown in the community, as to whether he was a dangerous man when under the influence of whiskey, and what that reputation was; but the question asked by counsel was not properly framed and the court did not err in sustaining the objection to it.

It is earnestly insisted for the appellant that the deceased died from the fracture of his skull and not from the pistol shot, and that the court should have peremptorily instructed the jury to find for the defendant. The rule on this subject is that the injury must contribute to the death of the deceased. 13 R. C. L., p. 748.

The indictment charged in apt words this: "From which shooting and wounding the said Brown died within a year and a day thereafter." The court instructed the jury in these words: "And that within a year and a day thereafter the said W. L. Brown died as a result thereof." It is undoubted from the evidence that Brown died from the injury to his skull, but it may be that he received the injury to his skull from the fall from his horse due to weakness and loss of blood resulting from the shot he had received in the back, or it may be that his horse was frightened by the automobiles and he fell from his horse from this cause and not as a result of the wound. The question was for the jury under all the evidence. But if Brown died from the injury received in the fall and this was not due to his being wounded, still the defendant is not entitled to a peremptory instruction, for he may be punished under the indictment for the shooting of Brown if unlawful, although Brown did not die from the wound. This is well settled. Houseman v. Commonwealth, 128 Ky. 818, and authorities cited.

In addition to the instructions given the court should have told the jury that if Brown's wound did not contribute to his fall from the horse and he would have fallen from his horse as he did if he had not been wounded, then if the shooting was not excusable, as set out in the foregoing instructions, they should find the defendant

guilty of willful shooting, if the shooting was done willfully and with malice aforethought and fix his punishment at confinement in the penitentiary for not less than one nor more than five years, or if the shooting was not done with malice aforethought, but in sudden heat and passion, he should be fined not less than fifty nor more than five hundred dollars or be confined in the jail not less than six months nor more than one year, or both in the discretion of the jury.

The 6th instruction given by the court is in these words:

"If the jury should believe from the evidence that at the time and on the occasion mentioned in the evidence the deceased was drunk or intoxicated, and that the defendants or any of them in good faith attempted to arrest him therefor, and while so doing deceased shot at either of the defendants with intent to kill either of them, and not in his own necessary self-defense, then deceased had committed a felony in their presence, and the defendants were then authorized under the law to arrest, and it was their duty to arrest deceased upon the felony charge, and they were authorized by law in making such arrest to use such force and only such force as was necessary to overcome such resistance, even to the taking of the life of the deceased, and in such event, it matters not that the defendants may not, at that time, be in danger of losing their lives, or of receiving great bodily harm at the hands of deceased, and if the jury believe from the evidence that the shooting and wounding of deceased occurred in the manner and under the circumstances as set out in this instruction, the said shooting and wounding was excusable and you should find the defendant not guilty."

This instruction improperly narrowed the right of the defendants in using the words, "to overcome such resistance." In Dilger v. Commonwealth, 88 Ky. 560, this court having before it the question what force the officer may use in a case of felony, thus stated the rule:

"Our statute is silent, save as above cited, as to the force he may use. We must, therefore, turn to the common law for guidance. By it, in a case of felony, he may use such force as is necessary to capture the felon, even to killing him when in flight."

Again, in Reed v. Commonwealth, 125 Ky. 139, the court, after stating the rule in the case of misdemeanor, thus stated the rule in a case of felony:

"But, in making an arrest for a felony a different rule obtains. In that event the officer may use such force as is necessary to arrest the felon, even to the extent of killing him when in flight."

This statement of the rule is in accord with the great weight of authority:

"The rule which forbids a peace officer, in effecting an arrest or resisting an escape of an offender, to kill the latter merely to prevent him from eluding pursuit, does not apply, according to the decided weight of authority, where the offender has committed a felony as contradistinguished from a mere misdemeanor. On the contrary, the rule is well settled that an officer may take the life of a person charged with felony if it becomes absolutely necessary to do so to effect his arrest, or to prevent his escape from custody." 13 R. C. L. 876.

On another trial in lieu of the words, "to overcome such resistance," the court will insert these words, "to effect his arrest or prevent his escape from custody." The instructions which the court gave practically limited the right of the officers to meeting resistance with force. On another trial in the first and second instructions after the words, "not in the necessary or apparently necessary self-defense or of his codefendants," the court will add these words, "or not as set out in instruction 6." In the first instruction the words, "wilfully, feloniously and with malice aforethought," should be inserted before the words, "did counsel, advise, incite or encourage," in the latter part of the instruction.

The defendants' objection to the argument of A. F. Bird should have been sustained insofar as it reflected upon Fitzpatrick for leaving his wife and daughter and going with Caudill and Green, or reflected upon the motives of the officers in following the lewd women or upon Fitzpatrick being appointed a deputy constable.

The court properly sustained the objection of defendants to the questions asked the officers whether they had a warrant for the arrest of the deceased or if any one had made an affidavit against the two women referred to or whether they sought to arrest the women for

walking the streets and talking to men. All of this was asked over and over again and was improper and prejudicial. Section 36 of the Criminal Code provides:

> "A peace officer may make an arrest . . . without a warrant, when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony."

The court properly followed the statute in instruction 5. The statute is peremptory. It does not allow a peace officer to make an arrest for a misdemeanor unless it is committed in his presence. It is not sufficient that he may have reasonable grounds to believe that such an offense has been committed. To hold this would be to add to the words of the statute.

Judgment reversed and cause remanded for a new trial.