# Crawford v. Commonwealth.

(Decided December 9, 1931.)

J. RIVERS WRIGHT and DAVID SESSMER for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The question presented by the appeal is the right of a private citizen to slay one whom he has arrested in order to prevent his escape from custody or to recapture him.

The appellant, Tom Crawford, killed Frank Steele, a colored man, and, upon conviction of manslaughter, has been sentenced to serve twenty-one years in prison.

The motive for the killing deduced by the commonwealth from a rather vague and shadowy basis is that the deceased had stolen whisky cached by the defendant, who, as admitted, was engaged in the illegal handling of whisky, and who had served a term in federal prison on that account. It is not necessary for a decision of the question presented, however, to notice the evidence introduced by the prosecution, for it rests alone on the consideration of his defense and the correctness of the instruction submitting it.

The daughter of the accused, not quite fourteen years old, on a Saturday evening had been forcibly detained in an attempt to have carnal knowledge with her, as she came through the state fair grounds near her home, which is a felony. Section 1158, Statutes. The matter was at the time reported to the police, and the little girl had described her assailant. The particular description given her father was that of a colored man who was, apparently, a customer of his; at least she said he had been around the home. Several names of suspects had been given the police, but the defendant had not named Steele. According to the defendant, on Sunday morning he set about to locate the man described by his daughter, and having found him, placed him under arrest by drawing a pistol on him. He conducted Steele to his home and called his daughter outside the kitchen door to see the man, and, when she positively identified him, the appellant directed her to have the police called. Then, according to Crawford, supported by the evidence of the daughter to the extent that she was able to know what occurred, Steele whirled and ran. Crawford called to him to stop, but instead he turned and shot twice at appellant, who then returned the fire, striking Steele in the back and in the right hand. When the police arrived, some fifteen minutes after receiving a call, the defendant told them he had killed the man, and the officers found his body lying about seventy-five steps away from the house in the commons. He had pursued the negro and caught him some distance farther from the house. As he was being brought back, according to the defendant, Steele collapsed just at the point where he had dropped his pistol as he was fleeing. A pistol was found by the body, but the evidence tends to show it belonged to the defendant and had been "planted". The theory of the prosecution in respect to the call for the police is that it was made after Steele had been killed, and that the

defense was a manufactured one, although the circumstances of the previous Saturday evening could not be denied.

In considering the applicable law, it may be stated the opinion is not concerned with cases where justification is rested upon a forcible resistance to arrest or recapture, where the offense committed or suspected of commission was a misdemeanor. We may also disregard cases like Mylett's Adm'r v. Burnley, 163 Ky. 277, 173 S. W. 759, where an escaping culprit was shot while fleeing and not resisting, for it does not appear that Crawford shot at the negro after he had dropped his pistol, though he still pursued him. The questions involved in all those cases belong in classes different from the one under consideration; namely, where a felony has in fact been committed, or upon reasonable grounds is believed by an arresting citizen to have been committed, and he kills one whom he believes and has reasonable grounds for believing is the felon, and who at the time has escaped and is forcibly resisting recapture.

Section 37 of the Criminal Code of Practice authorizes a private person to make an arrest "when he has reasonable grounds for believing that the person arrested has committed a felony." Section 36 gives a police officer additional power by authorizing him to make an arrest in obedience to a warrant, and when any public offense is committed in his presence. Section 43 prescribes that "no unnecessary force or violence shall be used in making the arrest." Under section 44, if a prisoner after an arrest escapes or be rescued the person in whose custody he was may immediately pursue and recapture him. No attempt has been made to define by statute what force or violence shall be deemed unnecessary. As it was stated in Head v. Martin, 85 Ky. 481, 3 S. W. 622, 9 Ky. Law Rep. 45, and in Dilger v. Commonwealth, 88 Ky. 550, 11 S. W. 651, 11 Ky. Law Rep. 67, the omission, in the case of an officer, requires the application of the common law, and that is, as stated in the opinions to be, in case of a felony that he may use such force as is necessary to capture the felon, even to killing him when in flight. So does the silence of the statutes in respect to the degree of force which may be used by a private citizen, for this statute so far as it authorizes a private citizen to make an arrest is but declaratory of the common law (Miles v. Brown, 143 Ky. 537, 136 S. W. 1001), although, as we shall see, it enlarges his powers.

The Code provision cited places a citizen in the respect indicated in the class of an officer. Hence, where the citizen undertakes to exercise the authority granted him, he has the same power and protection as a public officer. Commonwealth v. West (Ky.), 113 S. W. 76; Sexson v. Commonwealth, 239 Ky. 177, 39 S. W. (2d) 229. That authority, though variously expressed, is, fundamentally the power to use such force as is necessary to capture the felon, even to killing him when in flight. Dilger v. Commonwealth, supra. When the offender is in flight, the law is the same whether he be fleeing to avoid arrest or to escape from custody. Head v. Martin, 85 Ky. 483, 3 S. W. 622, 9 Ky. Law Rep. 45; Fitzpatrick v. Commonwealth, 210 Ky. 385, 275 S. W. 819.

All of the cases do not quite agree in their statements of the common law, so we may well turn back to Blackstone, where in book IV, page 292, it is said:

"Arrests by officers without warrant may be executed . . . in case of felony *actually* committed or a dangerous wounding, whereby felony is likely to ensue, he may upon probable suspicion arrest the felon and for that purpose is authorized (as upon a justice's warrant) to break open doors and even to kill the felon if he cannot otherwise be taken."

"Any private person (and *a fortiori* a peace officer) that is present when any felony is committed is bound by the law to arrest the felon on pain of fine and imprisonment if he escapes through the negligence of the standers-by. And they may justify breaking open the doors upon following him; and *if they kill him* provided he cannot be otherwise taken, it is justifiable though if *they are killed* in endeavoring to make such arrest it is murder. Upon proper suspicion also a private person may arrest the felon or other person so suspected but he cannot justify breaking open doors to do it; and if either party kill the other in the attempt it is manslaughter and no more. It is no more, because there is no malicious design to kill; but it amounts to so much because it would be of most pernicious consequence if under the pretense of suspecting felony any private person might break open a house or kill another and also because such arrest upon suspicion is barely *permitted* by the law and not enjoined as in the case

of those who are present when a felony is committed."

See, also, 2 R. C. L. 449; 13 R .C. L. 874.

The law which imperatively made it the duty of a private citizen to arrest or endeavor to arrest one who committed a felony in his presence, having actual knowledge of it, and made it optional or permitted him to do so "upon proper suspicion," has been superseded by the statutory law contained in section 36 of the Criminal Code of Practice. That simply gives the citizens the authority to arrest "when he has reasonable grounds for believing" the person to be apprehended has committed a felony. The common law, as above disclosed, did not justify a killing by a citizen in endeavoring to effect an arrest when he was acting "upon proper suspicion" and not upon actual knowledge. It was manslaughter if he did. Does that rule still apply, or has it been changed by the terms of section 43 prescribing that "no unnecessary force or violence shall be used in making the arrest," which, stated affirmatively, is that necessary force or violence may be used? The common law did not limit the extent or degree of force found necessary in case of an officer or of a citizen, where he had knowledge of the actual commission of a felony; but it did limit the authority of the citizen when he acted only upon "proper suspicion," by holding him to be guilty of manslaughter if death ensued from the force he used. But since our statutes have placed officers and citizens upon a par in respect to the authority to make arrests, and declares that all force necessary to effect the arrest may be used, it seems to us the intent was to place them on a par in that respect also. While in the Dilger Case it was said the omission to define or declare what is necessary force in the case of an officer required the application of the common law, it appears, in fact, that such was the same as our statutory law in respect to officers. The conclusion, therefore, is that a citizen may use whatever force an officer may use to effect an arrest when he has reasonable grounds for believing, and does believe, a person has committed a felony.

Until the decision in Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298, there was confusion in the opinions as to the degree of force which could be used, or rather as to who should be the judge of the degree of force to be used on such an occasion. The authorities

were reviewed in that case, and a definite rule deduced and established, which is that, where the right to make an arrest or rearrest for the commission of a felony exists, the officer or citizen is authorized to use such force and only such force as was necessary, or as appeared to him in the exercise of a reasonable discretion or judgment to be necessary, to effect the arrest or prevent an escape from custody, even to shooting and wounding the person sought to be arrested or restrained. To like effect is Bentley v. Commonwealth, 234 Ky. 37, 27 S. W. (2d) 397.

It should be added for emphasis and clarity that, while a private citizen may accomplish an arrest under the circumstances and in the manner outlined, he cannot act arbitrarily or make the occasion a pretext for wreaking his vengeance upon another whom he might wantonly or capriciously claim or might merely suspect, without a substantial basis, has committed a crime, or whom, though he may have reasonable grounds for believing is so guilty, he slays without justification. Therefore, an instruction relating to the authority to shoot and kill to accomplish an arrest must be, of course, premised upon the jury first believing from the evidence that the defendant at the time in good faith believed, and had reasonable grounds to believe, that the other person had committed a felony. Cf. Litteral v. Commonwealth, 223 Ky. 402, 3 S. W. (2d) 775; Logsdon v. Commonwealth, 235 Ky. 403, 31 S. W. (2d) 628.

Turning again to the record before us, it is found that the instruction undertaking to state the law in regard to the defendant's justification was erroneous. It correctly informed the jury that as a private citizen the defendant had the right to make the arrest of Steele, if he had reasonable grounds to believe that he had committed a felony by attempting to commit the rape upon his daughter, or to detain her against her will and consent, for the purpose of having carnal knowledge with her. It then advised the jury, in substance, that, if he had so arrested Steele, he had the right to shoot and kill him in his apparent necessary self-defense if Steele was attacking him. Thus the defendant was confined to the right of self-defense, and his right to overcome the resistance being offered by the negro to prevent recapture was not recognized. A similar instruction was condemned in Stevens v. Commonwealth, 124 Ky. 32, 98

S. W. 284, 286, 30 Ky. Law Rep. 290, where there was a forcible effort by a prisoner to release himself from custody. It is said in the opinion:

"It is, however, patent that the above instructions confined appellant's right to kill deceased to the single ground of self-defense, which was error. For, though he may not have had any reason to fear death or bodily harm at the hands of deceased, if the latter was attempting to release himself from arrest by forcibly overpowering appellant, the latter had the right to use such force as was reasonably necessary to overcome that being used by deceased to effect his release, even to the extent of shooting and killing the latter, if it reasonably appeared to appellant that that was the only way to prevent his release from his (appellant's) custody, though he would have had no right to shoot deceased if he had gotten away from him, and was fleeing to escape."

That was a forcible attempt to escape from arrest for a misdemeanor. So in respect to the lack of authority of an officer to kill, in order to prevent the escape from custody merely by flight, it is not applicable here.

Upon another trial, instructions conforming to the rules and conclusions herein stated should be given. The defendant submitted instructions upon this defense, but they omitted several of the important elements we have discussed.

It may be said that the evidence introduced by the commonwealth tending to show the defendant before this occasion had drawn deadly weapons on some persons and had shot at others whom he believed were in the act of stealing or had stolen whisky cached by him should be omitted, for he must be tried for one offense at a time. The court admonished the jury that such evidence was not to be considered against the defendant for any purpose other than as it might throw light upon the motive or purpose or intention that the defendant had in shooting Steele, if he did shoot him. But we do not regard it competent for any purpose.

The judgment is reversed.

Whole court sitting.