## Bentley v. Commonwealth.

(Decided April 22, 1930.)

38

A. J. KIRK and JOHN D. W. COLLINS for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clay—Reversing.

Milburn Bentley prosecutes this appeal from a judgment convicting him of voluntary manslaughter and fixing his punishment at two years' imprisonment.

Bentley was the town marshall of Neon, and the homicide occurred in that town in a restaurant conducted by Charlie Strickland, on Sunday evening, December 16, 1928. Bill Sexton, a witness for the commonwealth, who had theretofore been convicted of robbery, testified as follows: Charlie Gibson, the deceased, was in the restaurant when he arrived and there were several persons present. Just prior to the shooting Gibson was standing in the door. Bentley walked up and asked Gibson if he was not drunk. Gibson said "No." Bentley then asked if he did not have a gun. Gibson said that he did not have a gun. Gibson stepped back with his hands slightly lifted, whereupon Bentley jerked his gun and shot him twice. He was present at the shooting and did not remember telling any one that he was crossing the bridge above Neon when the pistol fired. He did not see Gibson with a pistol. Jim Smith, another witness for the commonwealth, was present and saw part of the difficulty. He was standing by the counter eating when Gibson came in singing with his hat in his hand, and was laughing and joking with the girls. Gibson walked to the door and laid his hand on the shoulder of one of the girls. Bentley came up and said, "What are you doing?" Gibson said, "Not anything." Bentley said, "You have got a gun, ain't you?" Gibson said, "No, sir, I haven't." Bentley took him by the shoulder and had his other hand on his hip. Gibson stuck his hands up this way (indicating) and started back. When that occurred witness turned his head and the shooting commenced. Two shots were fired.

He did not see Gibson have a pistol. On cross-examination witness said that when Gibson came in he was singing "Wild Bill Jones." As Gibson came back he had both his hands up. According to Birdie Stipes, who was referred to by some of the witnesses as "Nee High," Gibson came in the door singing "Wild Bill Jones," and said, "Hello boys." The crowd spoke to him and he took hold of her hand. He then turned her loose and took hold of Mattie Clem. She went to the door and Milburn and Judge Tolliver were standing at the door. As she walked up Gibson laid his right hand against the door and his left hand on her shoulder. As he did that the judge spoke something about Al Smith, and Gibson spoke to him. Milburn asked Gibson if he was not drunk and said something about arresting him. Gibson said he was not drunk. Bentley then asked him if he did not have a gun. Gibson took his hand down from the door and jumped back about two short steps. Milburn stepped up opposite him. She ran, and when she ran 8 or 9 steps she fell, and the shots were fired. The steps she took were outside of the house. She never saw Bentley with a pistol. She never saw Jim Smith there. He was there about five minutes before and said he was going upstairs to see Betty Joseph. She never saw Bill Sexton until after the boy was killed. She did not see what Gibson was doing at the time of the shooting. When Gibson came in he was singing a few words of "Wild Bill Jones," and said, "Come all you rounders and take a drink with me. Tomorrow will be the last of Wild Bill Jones and today will be the last of me." She could not tell whether Gibson was drunk or sober. "He did not act very right—did not act as he had been acting." She saw Gibson on Thursday in Neon and at that time he had a pistol. While sitting in a chair the pistol fell out on the floor and looked like a .38 special with pearl handle. The pistol that had been picked off the floor was presented to her and she said it looked like the same gun. She never smelled any liquor on Gibson.

Appellant testified as follows: He and Judge Tolliver had just gotten back from Fleming. Gibson came across the railroad into the restaurant singing "Wild Bill Jones" very loud. Gibson then went to the back of the heating stove next to the counter. He had his hat off waving it around and among the people there. Gibson hit the wall with his hat. He also slapped Mattie Clem

over the head with his hat. His singing was loud enough to attract people on the street. Gibson was drunk. Judge Tolliver spoke to Gibson and called him "Al Smith," and Gibson called the judge "Hoover." He walked up and said, "Charlie, you are feeling pretty good, ain't you?" Charlie said, "Yes, by God, I am." He said, "I will have to arrest you for being drunk." Charlie said, "No, by God, you don't," and shoved at him. He made a break to search Charlie. Charlie commenced stepping back and stepped something like four or five feet from the door. Charlie drew his pistol. At that time witness did not have his gun out. Witness then ran his hand in his pocket and drew out a small pistol and said, "Charlie, come on out, no use arguing, come on out like a man." Charlie made a dive at him with his pistol and he fired from the side. He shot because he thought Charlie was going to kill him. Judge Tolliver, the city judge of Neon, testified that he and appellant saw Gibson going toward Strickland's restaurant. He was singing, had his hat in his hand, and was staggering. "Nee High" came to the door and Gibson laid his arm on her shoulder. Gibson had been singing something about "Wild Bill Jones." He knew Gibson well and called him, "Al." He said, "What is the matter, Al?" Gibson said, "Oh, nothing, Hoover." Milburn said, "Charlie, you are drunk, I will have to arrest you," and Milburn walked up and reached his hand around to search him. Gibson jumped back and cursed, and jerked his pistol out. Bentley told Gibson then to come on out. As he said that Gibson leaned toward Bentley, like that (indicating), and just as Gibson's arm was straightening Bentley fired twice. After the shooting he found a pistol at the door, and took the pistol home with him. According to his best judgment Gibson was drunk. Numerous other witnesses corroborated appellant and Judge Tolliver as to what occurred at the time of the homicide, and as to Gibson's being drunk. In rebuttal the commonwealth introduced some witnesses who saw Gibson just prior to the homicide and stated that he was not drunk.

In view of the testimony of Bill Sexton and Jim Smith that Gibson was not drunk, that he did not have a pistol, and that he was holding his hands up when appellant fired, and of the evidence of other witnesses that Gibson was not drunk, it can not be said that there was no evidence on which to submit the case to the jury. It is true that the evidence greatly preponderates in favor

of appellant, but whether to such an extent that it can be said that the verdict was flagrantly against the evidence we need not determine.

In dealing with appellant's rights as an officer, the court instructed the jury as follows:

"The court further instructs the jury that if you believe from the evidence that at the time the defendant shot and killed the deceased, Charlie Gibson, if he did do so, the said Charlie Gibson was drunk on a public street in the presence of the defendant, or in the restaurant mentioned in the evidence in the presence of the defendant, it was the duty of the defendant as marshal of the town of Neon to arrest the deceased upon said charge; and in making such arrest the defendant had the right to use such force as was reasonably necessary therefor if the arrest was forcibly resisted; and if the deceased in resisting such arrest, drew a pistol up, pointed same at, or threatened to shoot the defendant, then the deceased had committed a felony in the presence of the defendant and the defendant was then authorized under the law, and it was his duty to arrest the deceased, not only for being drunk in a public place, but upon the felony charge as well, and he was authorized in making the arrest of the deceased to use such force and only such force as was necessary to effect the arrest of the deceased, even to shooting and killing him if necessary to effect his arrest. And if the jury believe from the evidence that the shooting and killing of the deceased occurred in the manner and under the circumstances as set out in this instruction the said shooting and killing of the deceased was excusable and you should find the defendant not guilty."

It will be observed that by this instruction the jury was told that defendant was authorized in making the arrest of the deceased "to use such force and only such force as was necessary to effect the arrest of the deceased," thus making the jury the sole judges of how much force was necessary, and of whether the defendant used excessive force. In the recent case of Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298, we had occasion to examine the question at length, and to review all the authorities, and there held that, where one who is

about to be arrested forcibly resists arrest in violation of section 1148a-7, Kentucky Statutes, he is guilty of a felony, and that the officer in overcoming the resistance and effecting the arrest may use such force as is necessary, or as appears to him in the exercise of a reasonable discretion to be necessary, and that it was error to omit from the instruction the words, "or as appears to him in the exercise of a reasonable discretion to be necessary;" and in view of the fact that the evidence greatly preponderates in favor of appellant, we are constrained to the view that the omission of the same words from the given instruction was prejudicial to appellant's substantial rights.

This conclusion renders it unnecessary to determine whether appellant was entitled to a new trial on the ground of newly discovered evidence, or to pass on any other questions.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.