## Bently v. Commonwealth.

(Decided February 5, 1932.)

A. J. KIRK & SON and JOHN D. W. COLLINS for appellant.

BAILEY P. WOOTTON, Attorney General, J. W. CAMMACK, Ex-Attorney General, and GEORGE H. MITCHELL, Ex-Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At about 7 p. m., on December 16, 1928, appellant and defendant below, Melburn Bently, shot and killed Charlie Gibson in a restaurant located in Neon, Ky. He was later indicted by the grand jury of Letcher county and charged with murder, and at his trial was convicted of voluntary manslaughter, but the judgment pronounced on that verdict was reversed by this court in an opinion reported in 234 Ky. 37, 27 S. W. (2d) 397, in which the substantial facts developed by the testimony were set out. The reversal was therein ordered solely upon a defect in an instruction relating to the duties and rights of defendant as an arresting officer; he at the time being town marshal of the town of Neon, and claiming that the deceased was drunk and disorderly when his arrest was first attempted by defendant, and that he committed a felony in the presence of defendant by resisting that arrest, it being one of those created by section 1148a-7 of the 1930 edition of Carroll's Kentucky Statutes.

However, in the recent case of Loveless v. Commonwealth, 241 Ky. 83, 43 S. W. (2) 348, we held that the statute creating that felony was unconstitutional for reasons stated in that opinion, and the instruction for the benefit of defendant, given by the court to the jury at the two trials of this case, was more beneficial to him than he was entitled to. But the first opinion in this case indorsing such an instruction should be held to be the law of the case, and for which reason should be given at subsequent trials, notwithstanding the opinion in the Loveless Case, then defendant got the benefit of that rule at his last trial (the one now under review) by the court giving the instruction as modified by the direction in our former opinion.

At his second trial defendant was again convicted of voluntary manslaughter and punished by confinement in the penitentiary for five years, and on this appeal therefrom his counsel urges these grounds for a reversal: (1) That the verdict is not sustained by the evidence, and that his motion for a directed verdict of acquittal should have been sustained, but, if mistaken in that, then the verdict is flagrantly against the evidence; (2) improper evidence introduced by the commonwealth over his objections and exceptions; and (3) erroneous instructions given to the jury. Other grounds are incorporated in the motion for a new trial, but they are not referred to in briefs of defendant's counsel, and will therefore, under the prevailing rule of practice in this court, be treated as abandoned. However, the record clearly discloses that none of them possess merit. We will therefore confine our discussion to the three argued grounds enumerated and dispose of them in the order named.

1. In our former opinion we held that the evidence of the commonwealth was sufficient to authorize a submission of the case to the jury, but we expressly reserved the question as to whether the verdict was flagrantly against the evidence and expressed no opinion concerning it. At the last trial the commonwealth introduced one or more additional witnesses who strongly corroborated those who testified for it at both trials, and to that extent the prosecution was strengthened. But, notwithstanding that fact, counsel with great earnestness and zeal still argue that the verdict is unsustainable by the evidence, and to such an extent that defendant was entitled to a directed acquittal, but which to our minds grows out of zeal of counsel for their client, rather than authorized by the correct rule of practice universally adopted and applied by this court. The number of eyewitnesses who testified at the last trial, both for the prosecution and for defendant, were more nearly divided in numbers, and they directly contradicted each other as to the immediate facts surrounding and attending the shooting. Some of those for the commonwealth testified that the deceased, while not excessively intoxicated, appeared to have taken one or more drinks and came into the restaurant singing, while others observed no intoxication.

Some ten or twelve men and women were in the restaurant at the time, and the testimony indicates that

the latter were of easy virtue. Deceased patted one of them on the shoulder, and the two finally reached the door of the restaurant, where deceased was standing with one hand on the door facing and the other on the girl's shoulder. At that time defendant and the police judge appeared, and deceased and the judge spoke to each other, addressing each other by their recently acquired nicknames of "Al Smith" and "Herbert Hoover," whereupon defendant said: "You are feeling pretty good ain't you, Charlie?" Deceased answered: "Not no better than common." Defendant then asked him if he was drunk and whether he (deceased) had a gun on his person, which deceased denied, and defendant announced that he would have to search his person. Some of the witnesses stated that defendant said, "I will have to arrest you," while others stated that he said, "I will have to arrest you for being drunk and to search you."

Deceased inquired if he had a search warrant, and made one step backwards with one foot and told defendant to "stand back," and at the same time threw up his hands, with nothing in either of them; whereupon defendant shot twice, but only one wound was inflicted, which killed deceased on the spot, the ball passing up his left nostril and the bullet lodging in the back part of his head. Defendant immediately ran away from the scene, but the police judge remained until the body of deceased could be looked after. Upon the whole the eyewitnesses who testified for the commonwealth made a clear case of unwarranted and felonious killing of deceased by defendant.

A slightly greater number of witnesses (perhaps one or two more) testified that when deceased stepped back and ordered defendant to "stand back" he made a move of his hands as though he was attempting to draw a weapon and some of them, including defendant, stated that he actually drew a pistol, when defendant immediately fired the fatal shot. But, according to our view, the strongest testimony for defendant is susceptible to the interpretation that, accepting the theory of defendant and his counsel, he shot hastily and probably without legal excuse in the exercise of his right of self-defense, or his right to effect the arrest, if indeed he possessed any right to kill in making the arrest, but which latter we do not now determine. However, the reports of the opinion of this court are full of cases

announcing and approving the rule that a verdict may not be considered as flagrantly against the evidence because it is founded on the testimony of a less number of witnesses than those testifying to the contrary; and the rule is equally well settled that the members of the jury are the judges of the credibility of the witnesses and of the convincing effect of their testimony in the light of all the facts and the circumstances developed at the trial. It is but little short of overzealousness to argue that the testimony in this case is insufficient to sustain the verdict, much less to argue that defendant was entitled to a directed acquittal.

But counsel unqualifiedly assert that the witnesses who testified for the commonwealth are of a low type of humanity and are disreputable characters with no regard for the truth, in the face of the fact that the record before us is wholly barren of any fact to sustain such charges except, perhaps, that the testimony develops the fact that the business carried on at the place where the killing occurred was not conducted in the same manner of running a Sunday school. But that fact, if an impeaching one, applies as well to the witnesses for the defendant as it does to those of the prosecution. We therefore conclude that there is no foundation for the argument advanced in support of ground 1.

2. The only evidence complained of in support of ground 2 is that given by the witness, Roy Maggard, who was introduced by the commonwealth. He testified that a short while before deceased came into the restaurant defendant was in it and while there put his arms around or on the shoulder of one of the female inmates, of the character hereinbefore referred to. That witness testified to a great many other facts material to the inquiry, and at the close of his testimony defendant moved the court to exclude all of it from the consideration of the jury, and the court overruled the motion, but admonished the jury that the part of the testimony with reference to defendant slapping or putting his arm around or on the shoulder of the female inmate "has no bearing in this case whatever," unless it showed some reason for the later difficulty in which deceased lost his life, and, in substance, that, if there should be no evidence to connect it with the later difficulty, it should be disregarded altogether by the jury. Under such circumstances it is impossible for us to discover wherein that testimony in

any manner prejudiced the substantial rights of defendant.

Moreover, it was not objected to at the time it was given, and, if defendant desired its exclusion, he should have confined his motion to the objectional part of the witnesses' testimony, and not to his evidence as an entirety, since much of it was directly pertinent to the issue being tried; j. e., the guilty nature of the homicide. Cases from this court are abundant to the effect that motions to exclude testimony must be direct and confined to the testimony specifically objected to, and not an all-inclusive one directed to both competent and incompetent testimony. We therefore conclude that this ground is without merit.

3.  The general objection to the instructions of the court is based upon the theory that defendant was entitled to one directing his acquittal, and, therefore none of the instructions given to the jury were proper. We have hereinbefore disposed of that argument adversely to the contention of counsel. But, in discussing this ground, counsel levels a specific objection to instruction No. 4 given by the court, which is the one defining defendant's rights and duties as an officer if the deceased committed an offense in his presence. The complained of instruction was identical in the respects complained of with the one given at the first trial, and it was approved in our opinion supra, reversing that judgment. It authorized defendant to arrest deceased if the latter had committed an offense in his presence, and the contention here made is, that it should have gone further and authorized him to arrest deceased if he ''had reasonable grounds to believe and did believe in good faith that deceased had so committed an offense,'' although it might eventually turn out that none such was committed, and the cases of Easton v. Commonwealth, 82 S. W. 996, 26 Ky. Law Rep. 960, and Weaver v. McGovern, 122 Ky. 1, 90 S. W. 984, are cited in support of that argument. But, without stopping to determine their relevancy to the facts of this case, we deem it sufficient to say, as we have hereinbefore stated, that, so far as the alleged felony committed in defendant's presence is concerned, he was largely advantaged by the instruction given, but to which he was not entitled under the Loveless opinion supra. But, beyond all that, the instruction as given on that point at the last trial was in the exact verbiage as the one given in the first trial, and which, as so framed, we

approved in our opinion supra, and its language in that respect became the law of the case at the last trial.

Before closing the opinion we deem it proper to say that we do not join in the belief, so earnestly expressed in briefs of counsel for defendant, that he did not obtain a fair and impartial trial, or that any alleged error in the record deprived him of any of his substantial rights. On the contrary, a survey of the testimony as a whole tends strongly to the belief that deceased was unnecessarily killed, and that defendant acted precipitately in firing his pistol.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.