## Gritton et al. v. Moore.

February 2, 1951.

W. B. Ardery, Judge.

Frank M. Dailey, Marion Rider for appellants.

Ardery & Hobson for appellee.

JUDGE LATIMER—Reversing.

Back in the summer of 1947, on the day of the difficulties out of which this action arose, Walter Moore, a Franklin County farmer, and his wife came to Frankfort with Price Cook, a neighbor. Appellee, after admittedly having had one drink of liquor, spent most of the afternoon walking about the city. The evidence discloses that late in the afternoon he approached Mrs. Leslie Hockensmith on the corner of Main and St. Clair Streets near Lerman's Store. Mrs. Hockensmith related that appellee reached out to touch her child whom she was pushing in a stroller. She stated that she did not like the appearance of the man and undertook to move away from him but that Moore moved to where she was and continued to walk along beside her. She then proceeded across the street to where Officer Gritton was standing. Moore continued by her side looking into her face. Upon reaching Officer Gritton, Mrs. Hockensmith informed him that Moore was following her. When the officer asked her if she knew him, she responded, "No." Gritton stated that he observed Moore walking across the street staring into the eyes of Mrs. Hockensmith; that he appeared to be drunk; and that after Mrs. Hockensmith's remarks, he placed Moore under arrest. It appears that they proceeded on down Main Street, Gritton holding Moore's left arm with his left hand, with his right hand on Moore's right shoulder. After they had proceeded some little distance, according to Moore, he asked Gritton why he was under arrest. Whereupon, Gritton replied because Moore was drunk. Moore denied being drunk and stated that Gritton called him "a damn lying son-of-a-bitch" and commenced hitting him with his club. According to Gritton, Moore, without warning, suddenly broke away, simultaneously striking Gritton knocking him against a parked car at the curb. Moore then ran back down the street toward the intersection of Main and St. Clair with Gritton in pursuit. Moore turned north on St. Clair Street toward Broadway and a little distance up St. Clair Street Gritton overtook him. Where-

upon, Moore struck Gritton several times about the face and body, knocking him down. It appears that Moore then proceeded farther toward Broadway on St. Clair Street. Constable Edward Dean, who was standing nearby, undertook to stop Moore and advised him "to behave himself and come on with me." Moore broke loose from Dean and proceeded on down the street. Upon reaching a point near the approach to Broadway, Dean again tried to apprehend Moore. Moore resisted and Dean called upon Officer Rudder, who was directing traffic at the corner of Broadway and St. Clair Streets, to assist him. Rudder immediately came to the assistance of Dean, at about which time Gritton, who was still pursuing Moore, came up. Moore jerked away from Rudder and again struck Gritton. Whereupon, Gritton told Rudder to hit Moore and stop him. Gritton states that up to this point he had never struck Moore. The arrest was finally effected and Moore was taken to jail. He persisted in his denial that he was drunk but did plead guilty to resisting arrest.

The above is principally the story as told by the officers. The record discloses considerable testimony of bystanders and disinterested people who stated that when they saw the officers proceeding with Moore, which was after the difficulties and encounters related above, Moore had his head bent forward and appeared to be in a dazed condition, during which time the officers continued to beat him over the head.

Moore brought action against the Officers, Rudder and Gritton, and their bondsmen, to recover damages for the unnecessary and unreasonable striking and beating him in undertaking to arrest him. He obtained judgment in the sum of $2,500 as damages for mental and physical suffering and mental anguish as a result of the beating, and $652.63 for his medical bills incurred as the direct and proximate result thereof.

The defendants are here asking reversal of that judgment upon the following grounds: (1) The court erred in overruling appellants' motion for a peremptory instruction made at the conclusion of the evidence for appellee and again at the conclusion of all of the testimony in the case. (2) The court erred in giving instructions numbers 1 and 2 offered by appellee over the objections of appellants. (3) The court erred in instructing

the jury as to the amount of medical expenses, as the evidence discloses no expenditure for medical expenses as a result of any injuries that may have been inflicted upon appellee. (4) The court erred in not permitting appellants to offer evidence showing previous acts of appellee which denoted mental derangement. (5) The court erred in reassembling the jury after it had been discharged, to permit it to reform its verdict. (6) The award of $2,500 damages is excessive.

It will be readily seen from the above facts that the court properly overruled appellants' motion for peremptory instruction.

We find considerable merit in appellants' argument relative to instructions. Let us look at the pertinent part of the instruction as given: "If the jury believe from the evidence that at the time and place mentioned in the pleadings herein that the defendant, E. W. Gritton, alone, or acting with the defendant, Lee Thomas Rudder, in making the arrest of the plaintiff or in retaining custody of the plaintiff thereafter, beat, or bruised the plaintiff beyond that which was or reasonably appeared * * * to be necessary to effect the arrest, to retain the plaintiff in custody thereafter, or to protect himself or the defendant, L. Thomas Rudder, or anyone else, from assault or attempted assault by the plaintiff; the jury will find for the plaintiff * * *."

It will be noted that almost from the beginning of the arrest there was apparent resistance. Appellee admits this fact himself and further admitted striking and knocking Officer Gritton down. The language "to protect himself or the defendant L. Thomas Rudder, or anyone else, from assault or attempted assault by the plaintiff" does not necessarily carry with it the idea of resistance to an arrest. It could mean an assault in absence of an attempted arrest. Appellee apparently recognizes the right to arrest here. In his petition it is alleged: "* * * and acting by virtue of his office as policeman, and under the above mentioned responsibility of law imposed upon him as a peace officer, reasonably suspecting this plaintiff to be drunk, arrested him." There is no charge of wrongful arrest. The instruction does not incorporate the right of the officer, when there is active resistance to the arrest, to use such force as necessary to overcome the resistive force and for pro-

tection against the arrested man's hands. The substance of a correct instruction will be found in Finnell v. Bohannon, 44 S. W. 94, 19 Ky. Law Rep. 1587, and in Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, and Tuck v. Beliles, 153 Ky. 848, 156 S. W. 883.

It is next contended that the court erred in its instruction relative to the amount of medical expenses. We have carefully scrutinized the record relative to this proposition and find it entirely impossible to ascertain any definite amount of medical expenses occasioned by the assault and battery. We cannot learn how much it cost to have the stitches made in the wound, or what was paid, if anything, for emergency attention. We have the general statement that the amount paid to Dr. Wiezel and the Wayside Hospital was $650.55. The Wayside Hospital, apparently, is an institution for mental patients. It appears that appellant had been suffering what is known as a paranoid type of schizophrenia. Obviously, appellee was cognizant of this fact as he stated in his petition that for some time prior to the difficulty herein, "he had suffered from a nervous disturbance and that he was suffering from said illness on that day * * * and that after the defendant, Gritton, had taken the plaintiff into his custody and the plaintiff not then being rational, the plaintiff attempted to and finally did break away and proceed down the street."

Dr. Wiezel, who attended Mr. Moore at the Wayside Hospital, stated that the blows received from the officers had no effect upon the mental condition of Moore and that during his stay at the hospital he was treated only for his mental condition, from which, according to Dr. Wiezel, the patient had been suffering for 4 or 5 years. Thus, it will be seen that the doctor, medical, and hospital bill as allowed was for treatment in this institution for a mental illness not caused by the beating by the officers, although the doctor said, in substance, such a beating might aggravate the condition. We observe, however that, according to his own pleadings, on the day he was arrested, Moore was not rational. No doubt, part of the medical and doctor bills were incurred as a result of the injuries complained of. Obviously, it was error to submit to the jury the expense of treatment for the mental illness, in the absence of a showing that same was a direct result of the blows received. Upon

another trial appellee may be able to separate such expenses so as to show definitely the amount incurred by reason of the injuries.

It is next contended that the court erred in not permitting appellants to offer evidence showing previous acts denoting mental derangement. Ordinarily such evidence would not be permissible and it is highly questionable whether such would be permissible here, other than that as it might go to the question of treatment in the mental hospital for an illness that had been in existence prior to the difficulty herein.

Complaint is next made that the court erred in reassembling the jury after it had been discharged to permit it to reform its verdict. The jury returned this verdict:

"We the jury find for the plaintiff Walter Moore against E. W. Gritton and Lee Thomas Rudder the sum of Twenty-Five Hundred Dollars $2,500.00 and amount of Medical Bill Six Hundred fifty-two Dollars and sixty-three cents $652.63.

"B. B. Strange, Foreman
"September 14, 1948."

The jury was then discharged. Observing that the defendant bondsmen were nowhere mentioned in the verdict, counsel for appellee inquired of the court regarding their liability. The court inquired of Mr. Strange, the foreman, if the jury had intended to find against the bondsmen also. Mr. Strange replied that they did to the limit of their liability. The court then reassembled the jury and informed it that it might retire and reform its verdict accordingly. This was done and the names of the bondsmen were added to the verdict above. This procedure was entirely unnecessary. The bondsmen had answered admitting that they were sureties on the bond and the extent of their liability thereon. This became, then, in the absence of any effort to show that the officers acted beyond their authority, or without authority and maliciously, a matter of law which the court could have properly cared for without resubmission of the case. See Romans v. McGinnis, 156 Ky. 205, 160 S. W. 928; and Turner et al. v. Smith, 313 Ky. 635, 232 S. W. 2d 1006.

Since the case must be reversed because of the im-

structions, we consider it unnecessary to discuss the question of excessive damages.

The judgment is reversed for proceedings consistent herewith.